Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/18/2019 01:10 AM CDT

- 933 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

State of Nebraska on behalf of Kaaden S.,
a minor child, appellee, v. Jeffery T.,
appellant, and Mandy S., appellee.

___ N.W.2d ___

Filed August 30, 2019.    No. S-17-1210.

1. **Paternity: Appeal and Error.** In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Evidence: Appeal and Error.** In a de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Child Custody: Visitation.** The Parenting Act does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody, and there exists a broad continuum of possible parenting time schedules that can be in a child's best interests.

5. **Child Custody: Visitation: Words and Phrases.** An alternating week-on-week-off parenting time schedule requires the child to spend roughly the same amount of time at each parent's residence and allows both parents to exert continuous blocks of parenting time for significant periods of time, and thus meets the statutory definition of joint physical custody.

6. **Child Custody: Visitation.** Where a parenting plan effectively establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.

- 934 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

7. **Divorce: Child Custody.** The Parenting Act authorizes a trial court to award joint custody in dissolution actions if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent.

8. **Courts: Appeal and Error.** The doctrine of stare decisis requires that appellate courts adhere to their previous decisions unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so. The doctrine is entitled to great weight, but it does not require courts to blindly perpetuate a prior interpretation of the law if it was clearly incorrect.

9. **Child Custody: Judges.** A blanket rule disfavoring joint physical custody is inconsistent with the Parenting Act and unnecessarily constrains the discretion of trial judges in some of the most important and difficult decisions they are called upon to make.

10. **Child Custody.** Joint physical custody is neither favored nor disfavored under Nebraska law. In fact, no custody or parenting time arrangement is either favored or disfavored as a matter of law.

11. ____. When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse.

12. **Visitation.** The Parenting Act provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance, and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests.

13. ____. When determining the allocation of parenting time that is in a child's best interests, a trial court should consider the parties' ability to communicate on issues such as transportation, homework, discipline, medical and dental appointments, and extracurricular activities. Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. The fact that one parent might interfere with the other's relationship with the child is also a factor to consider, but is not a determinative factor.

- 935 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

14. **Child Support: Rules of the Supreme Court.** The Nebraska Child Support Guidelines require child support orders to address how the parents will provide for the child's health insurance.

15. ____: ____. Neb. Ct. R. § 4-215(B) of the Nebraska Child Support Guidelines estimates $480 as an ordinary amount of nonreimbursed medical expenses, and that figure is then subsumed within the amount of child support that is ordered. Any nonreimbursed expenses exceeding $480 are prorated between the parties.

16. ____: ____. Child support payments should generally be set according to the child support guidelines.

Petition for further review from the Court of Appeals, Pirtle, Riedmann, and Welch, Judges, on appeal thereto from the District Court for Jefferson County, Ricky A. Schreiner, Judge. Judgment of Court of Appeals affirmed in part as modified, and in part reversed and remanded with directions.

Ronald R. Brackle for appellant.

Angelica W. McClure, of Kotik & McClure Law, for appellee Mandy S.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

In this paternity action, the district court awarded primary legal and physical custody of a minor child to the father and awarded the mother nearly equal parenting time. Child support was calculated using a joint custody worksheet, and the father was ordered to pay monthly support. The father appealed, assigning multiple errors, including that the award of nearly equal parenting time was, in effect, an award of joint physical custody and was an abuse of discretion. The Nebraska Court of Appeals agreed, and it reversed and remanded with directions to modify the mother's parenting time so it was "consistent with an award of primary physical custody" to the father.[1] In

---

[1] *State on behalf of Kaaden S. v. Jeffery T.*, 26 Neb. App. 421, 430, 920 N.W.2d 39, 48 (2018).

- 936 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

doing so, the Court of Appeals relied on Nebraska precedent holding that joint physical custody is disfavored and should be reserved for rare cases.[2] We granted the mother's petition for further review to reexamine that precedent.[3]

We now hold that a blanket rule disfavoring joint physical custody is inconsistent with the Parenting Act,[4] which requires that all determinations of custody and parenting time be based on factors affecting the best interests of the child. We thus disapprove of our prior rule disfavoring joint physical custody, and we clarify that Nebraska law neither favors nor disfavors any particular custody arrangement and instead requires all such determinations to be based on the best interests of the child.

When the custody and parenting time in the instant case are reviewed under this standard, we find no abuse of discretion. We thus reverse the Court of Appeals' determination to the contrary and remand the matter with directions to affirm the judgment of the district court as it regards custody, parenting time, and child support.

## I. FACTS

Kaaden S. was born to Mandy S. and Jeffery T. in June 2014. The parents did not have a dating relationship either before or after conception. Mandy notified Jeffery of her pregnancy, and Jeffery was at the hospital on the day Kaaden was born.

In February 2015, the State filed a paternity action against Jeffery in the district court for Jefferson County, including Mandy as a third-party defendant. Jeffery's answer admitted paternity, and he filed a cross-claim against Mandy seeking

---

[2] *State on behalf of Kaaden S., supra* note 1, citing *Erin W. v. Charissa W.*, 297 Neb. 143, 897 N.W.2d 858 (2017).

[3] See, e.g., *Erin W., supra* note 2; *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007); *Trimble v. Trimble*, 218 Neb. 118, 352 N.W.2d 599 (1984); *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

[4] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2018).

- 937 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

joint legal and physical custody of Kaaden and asking that Kaaden's surname be changed. Mandy's responsive pleading admitted Jeffery was Kaaden's father and requested sole legal and physical custody of Kaaden. Genetic testing later confirmed Jeffery was Kaaden's biological father.

In July 2015, the district court entered an order finding Jeffery was Kaaden's father, but reserved the issues of custody, parenting time, and child support pending further hearing. Approximately 1 year later, when Kaaden was nearly 2 years old, the district court entered an order establishing temporary child support and parenting time. The temporary order allowed Jeffery supervised, nonovernight visits for 60 days and then progressed to give Jeffery parenting time every other weekend and on Wednesday evenings.

Mandy did not comply with the temporary order and consistently refused to allow Jeffery overnight parenting time with Kaaden. Jeffery sought to have Mandy held in contempt of court for failing to comply with the temporary order, and the contempt matter was set to be taken up at the time of trial.

Generally, as Jeffery's parenting time with Kaaden increased, the quality of the interaction between Mandy and Jeffery decreased. In November 2016, Jeffery made an audio recording of a particularly contentious interaction with Mandy that occurred during an exchange of Kaaden. In the recording, Mandy can be heard yelling at Jeffery and belittling his attempts to build a relationship with Kaaden. During this interaction, Mandy pepper-sprayed Jeffery in the face and then called police to report she had been assaulted. Jeffery played the recording for the officers, and no arrest was made.

After this incident, it became even more difficult for Mandy and Jeffery to communicate. Exchanges for parenting time occurred at the sheriff's office, but remained contentious. The parties twice attempted to mediate the issues of custody, parenting time, and child support, but both times, Mandy refused to sit in the same room with Jeffery and no agreement was reached.

- 938 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

### 1. Trial

In May 2017, trial was held on the issues of custody and parenting time, child support, and contempt of the temporary order. Jeffery, whose pleadings originally had requested joint custody, sought primary physical custody of Kaaden at trial. He testified that if awarded primary custody, he would support Mandy and Kaaden's relationship and adhere to any parenting time order imposed. He also asked that Kaaden's surname be changed to his surname.

Mandy testified that she did not think joint custody would work because she and Jeffery did not communicate well, though she thought that would improve once the litigation was concluded. She asked to be awarded sole legal and physical custody of Kaaden and proposed that Jeffery have parenting time every other weekend. She requested continued child support and opposed changing Kaaden's surname. Mandy admitted she had not adhered to the parenting plan under the temporary order, but she testified that Kaaden was scared and did not want to have visits with Jeffery. She said that around the time that Jeffery's parenting time was to increase under the temporary order, Kaaden began exhibiting behavioral problems, so she took him to see a counselor.

Kaaden's counselor testified at trial. She initially diagnosed Kaaden with "separation trauma and extreme anxiety," but testified he showed significant growth over the 5 months she worked with him. The counselor had no concerns about Mandy as a custodial parent, but offered the opinion that it was best for Kaaden that contact between Mandy and Jeffery be limited. According to the counselor, Mandy had "significant unresolved issues" toward Jeffery, and she recommended Mandy participate in treatment to address it. The counselor had no opinion on the feasibility of joint custody, but did have a recommendation regarding future parenting time. She recommended that after a transition period, Jeffery's parenting time should be "week on, week off . . . until [Kaaden] reaches middle school grade age."

- 939 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

Before trial, the court appointed an attorney to serve as the guardian ad litem (GAL) for Kaaden. The GAL attended trial but did not testify. Instead, she was ordered by the court to submit a recommendation and written report, which was received into evidence after trial. No party objected to this procedure before the trial court.

The GAL's report detailed that she had met with both parties and their counsel, visited Kaaden at both parties' homes, observed exchanges of Kaaden during parenting time, and interviewed more than a dozen people including a nationally recognized expert in the area of parental alienation, members of Mandy's family, and friends and acquaintances of Jeffery. The GAL described the case as "one of the most difficult cases [she had] worked on in 20 years of being appointed as a [GAL]." Her report stated she was "completely confident in making the recommendation that Kaaden's primary physical custody be awarded to . . . Jeffery." The GAL believed that Mandy's "loathing" of Jeffery was harmful to Kaaden and that Mandy's pattern of "parental alienation" was unlikely to change. The GAL expressed the opinion that "it would be in Kaaden's best interests to be in a parent's custody [who] is going to make a good faith effort to work with the other parent and not sabotage Kaaden's relationship with that parent."

#### (a) Custody and Parenting Time

The trial court's order summarized the evidence adduced at trial and generally found that both parents were fit and had formed a good relationship with Kaaden. But the court noted:

> The complicating factor in this matter is the lack of a relationship between the parents, both prior to Kaaden's conception and continuing, and the obvious resentment Mandy has towards Jeff[er]y and the situation in which she now finds herself. Mandy testified that she believes Kaaden needs his father in his life and does not believe that Jeffery abuses Kaaden in any fashion, although she . . . appears to do everything she can to limit or monitor Jeff[er]y and Kaaden's relationship. The record reflects

- 940 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

that she has done everything in her power to prevent Jeff[er]y from being a father to Kaaden by contesting and litigating every attempt he has made to do so. Mandy's testimony at trial indicated that while she wanted to be a mother at some point in her life she did not envision it happening in this fashion nor was this part of her plan. That said, it's obvious she loves Kaaden. Her anger towards Jeff[er]y, unfortunately, clouds her judgment regarding what is in Kaaden's best interests at times, especially when it comes to allowing Jeffery to be involved in his life.

Mandy and Jeff[er]y both provide safe and appropriate homes for Kaaden where he enjoys a healthy diet, has a bed to sleep in, and toys and activities to keep him occupied and engaged.

. . . .

The court has addressed the parties, on the record, during the pendency of this matter. Each time I addressed them I tried to remind them that Kaaden's interests are best served by having both of his parents involved in his life, and tried to encourage Mandy to see past her hurt, fear, and anger and allow Kaaden to have his father in his life. Unfortunately, the report from [the GAL] indicates those words went in one ear and out the other because nothing has changed with her behavior. It appears she is still putting more value on her hate and anger than she is on Kaaden's ability to have a father actively engaged in his life and the benefits of that relationship.

For the reasons stated above, as well as the firm belief that doing so best ensures compliance with the order of custody so that Kaaden can enjoy the full benefits of having both parents involved in his life to the greatest degree possible, the court finds that it is in Kaaden's best interests that primary legal and primary physical custody be awarded to . . . Jeff[er]y . . . subject to liberal parenting time with . . . Mandy . . . .

- 941 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

The decree awarded Jeffery "primary legal and primary physical care, custody and control" of Kaaden, pursuant to a court-created parenting plan. The parenting plan described the custody award as follows:

> The father shall have sole legal and physical custody of the minor child and, as such, shall have the legal responsibility and authority to make final decisions concerning the parenting functions necessary to raising the child.
>
> . . . The principal place of residence (physical custody) of the child shall be with the father, (custodial parent) subject to the terms of this Plan.

The court-created parenting plan provided that after a brief transition period, Mandy and Jeffery would have parenting time in alternating 1-week blocks. Exchanges were to occur each Friday at 6 p.m. at the sheriff's office. The plan addressed holidays and gave each parent 2 uninterrupted weeks of summer parenting time.

### (b) Child Support and Nonreimbursed
### Health Care Costs

The court used worksheet 3 of the Nebraska Child Support Guidelines, the joint custody worksheet, to calculate child support, and the completed worksheet was attached to the decree. In allocating the number of overnights for each parent (line 5 on the worksheet), the court attributed 182 days to Mandy and 183 days to Jeffery. Jeffery was ordered to pay child support of $93 per month and to provide health insurance for Kaaden. He was also ordered to pay the first $480 of Kaaden's nonreimbursed reasonable and necessary health care expenses each year, and Mandy was ordered to pay 50 percent of such expenses in excess of $480.

### (c) Name Change, Contempt,
### and Attorney Fees

Jeffery's request to change Kaaden's surname was denied. The court found Mandy in willful contempt for failing to comply with the terms of the temporary order and imposed a

- 942 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

sanction of $50, but did not impose a purge plan. Finally, the court declined to award attorney fees and ordered the parties to pay their own fees and costs.

## 2. COURT OF APPEALS

Jeffery appealed, assigning that the district court erred in (1) ordering equal parenting time, (2) calculating child support using the joint custody worksheet, (3) ordering him to pay the first $480 in nonreimbursed health care expenses, (4) refusing to change Kaaden's surname, (5) imposing a nominal fine for Mandy's contempt, and (6) denying his request for attorney fees.

The Court of Appeals found no merit to the arguments regarding the name change or attorney fees. But it agreed with Jeffery that the district court erred in its determinations regarding parenting time, child support, nonreimbursed health care expenses, and contempt. We summarize the court's reasoning below.

### (a) Custody and Parenting Time

Before the Court of Appeals, Jeffery claimed the district court's parenting plan was "essentially a Joint Physical Custody Plan,"[5] which he argued was an abuse of discretion. The Court of Appeals agreed. It acknowledged that the district court had awarded primary physical custody to Jeffery, but it concluded that by giving Mandy nearly equal parenting time, the district court effectively imposed "the standard joint physical custody arrangement."[6] In considering whether such an arrangement was an abuse of discretion, the Court of Appeals relied on this court's precedent which holds:

> Joint physical custody should be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to

---

[5] Brief for appellant at 22.

[6] *State on behalf of Kaaden S., supra* note 1, 26 Neb. App. at 431, 920 N.W.2d at 49.

- 943 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.[7]
The Court of Appeals found that Mandy and Jeffery had "virtually no ability to communicate with each other regarding Kaaden"[8] and concluded it was an abuse of discretion to establish a parenting time schedule that amounted to joint physical custody. It thus affirmed the award of primary legal and physical custody to Jeffery, but reversed the parenting plan and remanded the matter to the district court to implement a parenting time schedule "consistent with an award of primary physical custody to Jeffery."[9] It did not indicate what the parameters of such a plan must be.

(b) Child Support and Medical Expenses

Because the matter was being remanded to reduce Mandy's parenting time, the Court of Appeals also found the trial court's use of the joint custody worksheet to calculate child support was in error. It therefore reversed the child support award and remanded the matter for recalculation "using the appropriate worksheet."[10] The Court of Appeals also reversed the provision in the decree requiring Jeffery to pay the first $480 of Kaaden's nonreimbursed health care expenses. It reasoned that children's health care expenses are specifically included in the child support guidelines amount of up to $480 per child per year[11] and that consequently, any nonreimbursed health care costs up to $480 were subsumed within the amount of child support ordered.[12] It directed the trial court, upon

---

[7] *Id.*, citing *Erin W., supra* note 2.

[8] *Id.* at 433, 920 N.W.2d at 50.

[9] *Id*. at 430, 920 N.W.2d at 48.

[10] *Id*. at 433, 920 N.W.2d at 50.

[11] See Neb. Ct. R. § 4-215(B) (rev. 2011).

[12] See, *id.*; *State on behalf of Martinez v. Martinez-Ibarra*, 281 Neb. 547, 797 N.W.2d 222 (2011).

- 944 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

recalculating child support to reflect Mandy's reduced parenting time, to then allocate nonreimbursed health care costs in excess of $480 accordingly.

### (c) Name Change, Contempt, and Attorney Fees

Although not directly relevant to this petition for further review, we note that the Court of Appeals affirmed the district court's refusal to change Kaaden's surname, affirmed the district court's denial of Jeffery's request for attorney fees, and found that the district court committed plain error with respect to the unconditional sanction imposed for Mandy's contempt. Our opinion on further review does not affect those findings.

We granted Mandy's petition for further review.

### II. ASSIGNMENTS OF ERROR

On further review, Mandy assigns, restated, that the Court of Appeals erred in (1) reversing the parenting plan and remanding the matter with instructions to reduce Mandy's parenting time, (2) finding the record did not support joint physical custody when the district court created a parenting plan that gave Mandy "de facto"[13] joint physical custody, and (3) reversing the child support calculation and the requirement that Jeffery pay the first $480 of Kaaden's nonreimbursed health care expenses.

### III. STANDARD OF REVIEW

[1,2] In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion.[14] A judicial abuse of discretion exists if the reasons or rulings of a trial judge

---

[13] Brief for appellee Mandy S. in support of petition for further review at 2.

[14] *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011).

- 945 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[15]

[3] In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[16]

## IV. ANALYSIS

In her first two assignments of error, Mandy argues the Court of Appeals erred in reversing the parenting time schedule and remanding the matter with directions to reduce her parenting time. After reexamining our jurisprudence, we agree.

As noted, the district court awarded Jeffery "primary" legal and physical custody of Kaaden and imposed a parenting plan that gave Mandy nearly equal parenting time. The Court of Appeals relied on its own precedent[17] and precedent from this court[18] to conclude that an award of nearly equal parenting time amounted to an award of de facto joint physical custody. It found such a custody arrangement was an abuse of discretion, relying on the legal proposition that joint physical custody is disfavored and should be reserved for rare cases.[19] We granted further review to reexamine that proposition. Before doing so, we set out the legal framework that governs child custody determinations in Nebraska.

### 1. Legal Custody

Under the Parenting Act adopted by the Nebraska Legislature, the concept of child custody encompasses both "legal custody and physical custody."[20] "Legal custody" focuses entirely on

---

[15] *Leners v. Leners*, 302 Neb. 904, 925 N.W.2d 704 (2019).

[16] *Cesar C., supra* note 14.

[17] *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

[18] *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999).

[19] See, *Erin W., supra* note 2; *Aguilar, supra* note 3.

[20] § 43-2922(7).

- 946 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

decisionmaking authority and is defined as "the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health."[21]

Here, Jeffery was awarded Kaaden's legal custody, and no party disputes that award. As such, Jeffery has the final say on fundamental decisions regarding Kaaden's welfare, such as where he attends school, his religious upbringing, and how his health and medical needs are met.[22] Because Kaaden's legal custody is not at issue in this appeal, we focus our analysis on the issues of physical custody and parenting time.

## 2. Physical Custody and Parenting Time

"Physical custody" is defined by the Parenting Act as "authority and responsibility regarding the child's place of residence and the exertion of continuous parenting time for significant periods of time."[23] As such, although the Parenting Act does not speak in terms of "sole" or "primary" physical custody, it contemplates that an award of physical custody will determine the child's primary residence and identify the parent who will exert "significant" and "continuous" parenting time over the child.[24]

"Joint physical custody" as defined by the Parenting Act means "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time."[25] The Parenting Act does not further define either "significant periods of time" or "continuous blocks," but it does define "parenting time."[26]

---

[21] § 43-2922(13).

[22] See *id.*

[23] § 43-2922(20).

[24] See *id.*

[25] § 43-2922(12).

[26] See *id.*

- 947 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

"Parenting time" is defined under the Parenting Act as "communication or time spent between the child and parent."[27] And the Parenting Act makes clear that regardless of the physical custody arrangement, when parents are exercising parenting time, they are performing "[p]arenting functions."[28] Parenting functions are defined to include maintaining a safe, stable, consistent, and nurturing relationship with the child; attending to the child's ongoing developmental needs, including feeding, clothing, grooming, emotional stability, and appropriate conflict resolution skills; attending to adequate education for the child; assisting the child in maintaining a safe, positive, and appropriate relationship with each parent and other family members; minimizing the child's exposure to harmful parental conflict; assisting the child in developing skills to maintain safe, positive, and appropriate interpersonal relationships; and exercising support for social, academic, athletic, or other special interests.[29]

[4] The Parenting Act does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody, and there exists a broad continuum of possible parenting time schedules that can be in a child's best interests. Nebraska has a number of appellate cases in which the parties disagreed over whether a particular custody and parenting time arrangement was properly characterized as sole physical custody with liberal parenting time or as joint physical custody.[30] But in this case, that analysis is not difficult, and both parties concede the court effectively imposed a joint physical custody arrangement. We agree.

[5] The district court awarded the parents nearly equal parenting time in the form of an alternating week-on-week-off

---

[27] § 43-2922(19).

[28] § 43-2922(17).

[29] *Id.*

[30] See, e.g., *Dooling v. Dooling, ante* p. 494, ___ N.W.2d ___ (2019); *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017); *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013); *Hill, supra* note 17.

- 948 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

schedule. Such a schedule requires Kaaden to spend roughly the same amount of time at each parent's residence and allows both parents to exert continuous blocks of parenting time for significant periods of time, and thus meets the statutory definition of joint physical custody.[31]

[6] Where a parenting plan effectively establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.[32] In several cases, we have looked past the labels used by the trial court when describing the physical custody arrangement and have focused instead on the actual terms of the parenting plan adopted by the court.[33] Such cases illustrate that it is the trial court's allocation of parenting time that drives the physical custody label, not the other way around.

We therefore agree with the parties and the Court of Appeals that regardless of the label used in the decree and parenting plan to describe physical custody, the trial court here effectively imposed a joint physical custody arrangement by creating a week-on-week-off parenting time schedule.[34] For the sake of clarity, we modify the language of the decree and parenting plan to reflect this holding.

We turn next to the question whether, by effectively imposing a joint physical custody arrangement, the trial court abused its discretion. The Court of Appeals concluded it did, citing our

---

[31] *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018) (parenting plan establishing every-other-week parenting time schedule with equal time over summer break meets statutory definition of joint physical custody regardless of label used by trial court).

[32] See, *id.*; *Elsome, supra* note 18.

[33] See, e.g., *Dooling, supra* note 30, *ante* at 517, ___ N.W.2d at ___ ("the label that a court uses is not controlling and . . . the classification of a custody arrangement is ultimately dictated by parenting time"); *Becher, supra* note 31, 299 Neb. at 225, 908 N.W.2d at 29 ("the labels make little difference" when parenting plan sets forth parent's rights and responsibilities).

[34] See *id.*

- 949 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

cases that generally disfavor joint physical custody arrangements, especially when there is evidence the parents have difficulty communicating.[35] The time has come to reexamine those cases, and we turn to that discussion now.

### 3. Trimble v. Trimble

One of the first times this court addressed the concept of joint physical custody was in *Trimble v. Trimble*,[36] decided in 1984. In that case, the trial court awarded physical custody of two young children to the mother, finding she had "spent a great deal more of her time with the children, has the more predictable work and leisure schedule, and was more concerned with the children's education."[37] On appeal, the father argued it was error not to award joint physical custody.

*Trimble* noted that "in a given case joint custody might very well act to preserve the parent-child bond for both parents and thus avoid the severance of either of the attachments."[38] But without citation or further explanation, *Trimble* opined:

> We believe, however, that such arrangements must be reserved for the most rare of cases, i.e., where in the judgment of the trial court the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction. A collateral question exists as to why those most ideal of parents, who would satisfactorily cope with the conflicts inherent in a joint child custody arrangement, came to be divorced in the first instance. . . . We are not prepared to reject the concept of joint custody, but are not prepared to state that it should be a regular tool in the remedies of the district courts.[39]

---

[35] See, e.g., *Erin W., supra* note 2; *Zahl, supra* note 3; *Trimble, supra* note 3; *Aguilar, supra* note 3.

[36] *Trimble, supra* note 3.

[37] *Id*. at 119, 352 N.W.2d at 600.

[38] *Id*. at 119, 352 N.W.2d at 600-01.

[39] *Id*. at 120, 352 N.W.2d at 601.

- 950 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

*Trimble* was decided at a time when Nebraska law did not distinguish between legal and physical custody, so many of our opinions applying *Trimble* described a blanket rule that "joint custody" is disfavored and must be reserved for the rarest of cases.[40] More recently, articulation of the *Trimble* rule has focused on joint physical custody; in *Zahl v. Zahl*,[41] we described the rule this way:

> [J]oint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.

*Trimble* and *Zahl* use different phrasing but stand for the same blanket proposition—that joint custody arrangements are generally disfavored and should be reserved for rare or special cases.

### 4. Revisiting *Trimble*

[7] Recently, in *Leners v. Leners*,[42] we cited the rule disfavoring joint custody but cautioned that it should not be viewed as a "hard-and-fast rule." We emphasized that the Parenting Act authorizes a trial court to award joint custody

---

[40] See, e.g., *Ensrud v. Ensrud*, 230 Neb. 720, 727, 433 N.W.2d 192, 197 (1988) ("[t]his court has frequently and consistently expressed disapproval of joint custody as a purported solution for the difficulty confronted by a court in determining a question concerning child custody"); *Wilson v. Wilson*, 224 Neb. 589, 590, 399 N.W.2d 802, 803 (1987) ("[w]e have . . . stated explicitly that joint custody is not favored and must be reserved for only the rarest of cases"); *Korf v. Korf*, 221 Neb. 484, 486, 378 N.W.2d 173, 174 (1985) ("[a]n award of joint custody of minor children is not favored. Such an award must be reserved for the most rare of cases").

[41] *Zahl, supra* note 3, 273 Neb. at 1053, 736 N.W.2d at 373. Accord, *Erin W., supra* note 2; *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018); *Hill, supra* note 17.

[42] *Leners, supra* note 15, 302 Neb. at 913, 925 N.W.2d at 712.

- 951 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

in dissolution actions "'if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent.'"[43]

In *Leners*, we affirmed an award of joint legal and physical custody, finding it was in the child's best interests, despite evidence the parents had a contentious relationship. In doing so, we analyzed the parents' relationship as one of many factors bearing on the child's best interests. We noted that both parents were fit and that the child had a good relationship with each. We ultimately concluded that by establishing a parenting plan that afforded roughly equal parenting time, the trial court had fashioned a schedule that maximized the child's time with both parents, accommodated the father's unusual work schedule, and minimized the number of transitions and the need for communication and coordination between the parents. We found this plan served the child's best interests. *Leners* did not expressly disapprove of the *Trimble* rule,[44] but our analysis highlighted tension between the best interests analysis required under the Parenting Act and a blanket rule that disfavors joint custody and reserves it only for rare cases.

We are persuaded the time has come to expressly reexamine the proposition that joint custody arrangements are disfavored and "reserved" for rare or special cases.[45] The Wyoming Supreme Court recently engaged in a similar reevaluation of its judicial rule disfavoring joint custody.

In *Bruegman v. Bruegman*,[46] Wyoming acknowledged that its longstanding rule had been to disfavor joint custody """"absent good reason"""" based on the rationale that """"stability in a child's environment is of utmost importance to the child's

---

[43] *Id.* at 913-14, 925 N.W.2d at 712, quoting Neb. Rev. Stat. § 42-364(3)(b) (Cum. Supp. 2018).

[44] See *Trimble, supra* note 3.

[45] See *id.* at 120, 352 N.W.2d at 601.

[46] *Bruegman v. Bruegman*, 417 P.3d 157 (Wyo. 2018).

- 952 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

well-being"'"[47] and out of concern that joint custody could be successful only when "'""the parents are able to communicate and agree on the matters relevant to the children's welfare."'""[48] In evaluating whether it should change its rule disfavoring joint custody, the Wyoming court did not analyze the evolving social science on parenting and child development, nor did it discuss arguments advanced for or against joint custody. Instead, it found that its blanket rule disfavoring joint custody was inconsistent with Wyoming statutes that require child custody to be determined based on the best interests of the child. It noted that courts in Iowa[49] and Maryland[50] had previously criticized application of a blanket rule disfavoring joint physical custody, reasoning that the question whether joint physical custody is appropriate should be based on the individual circumstances of each case and not on general presumptions that may or may not be applicable.[51] Wyoming ultimately rejected its precedent disfavoring joint custody and held instead that the fundamental consideration governing all child custody determinations is the best interests of the child. Citing the proposition that "'""joint custody, in any of its multiple forms, is but another option available to the trial judge,"'""[52] the Wyoming court concluded that "shared custody should be considered on an equal footing with other forms of custody."[53]

---

[47] *Id.* at 162.

[48] *Id.*

[49] *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (concluding "the joint physical care issue must be examined in each case on the unique facts and not subject to cursory rejection based on a nearly irrebuttable presumption found in our prior cases").

[50] *Taylor v. Taylor*, 306 Md. 290, 302, 508 A.2d 964, 970 (1986) (reexamining rule that joint physical custody is "an arrangement 'to be avoided, whenever possible, as an evil fruitful in the destruction of discipline, in the creation of distrust, and in the production of mental distress in the child'").

[51] *Bruegman, supra* note 46.

[52] *Id.* at 163. Accord *Taylor, supra* note 50.

[53] *Id.* at 164.

- 953 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

### 5. Joint Custody No Longer Disfavored

[8] The doctrine of stare decisis requires that we adhere to our previous decisions unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.[54] The doctrine is entitled to great weight, but it does not require us to blindly perpetuate a prior interpretation of the law if we conclude it was clearly incorrect.[55]

We can conceive of no principled justification for continuing to apply a blanket rule that disfavors joint legal or physical custody, especially when the rule is based on generalized concerns regarding parental maturity and possible behavioral consequences to a child from spending substantial amounts of time with each parent. Such concerns may well be valid in any given case and in that event should be considered in light of all the other factors and circumstances in arriving at a custody and parenting time arrangement that serves the best interests of the child at issue. But a blanket rule disfavoring joint legal or physical custody is difficult to reconcile with the Parenting Act, under which the best interests of the child are the polestar of all child custody and parenting time determinations.[56]

We see nothing in the Parenting Act that either favors or disfavors any particular custody or parenting time arrangement. The Parenting Act simply requires that all custody and parenting time arrangements be determined based on the best interests of the child.[57] The Parenting Act "presumes the critical importance of the parent-child relationship in the welfare and development of the child and that *the relationship between the child and each parent should be equally considered unless it is contrary to the best interests of the child*."[58] The Parenting

---

[54] *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017).

[55] See *id*.

[56] See §§ 43-2921 to 43-2923. See, also, § 42-364(2) (Reissue 2016).

[57] § 43-2923(6).

[58] § 43-2921 (emphasis supplied).

- 954 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

Act also states that the best interests of the child require, among other things, "appropriate, continuing quality contact" between the child and parents who have shown the ability to act in the child's best interests.[59] The Parenting Act neither expresses nor suggests a default position favoring or disfavoring any particular custody arrangement, even one agreed to by the parents,[60] and instead requires that all such determinations be based on the best interests of the child.[61]

We note that, in dissolution actions where the parents have not agreed to joint custody, § 42-364(3) requires that before joint custody may be ordered, there must be a hearing in open court and an express finding that joint custody is in the child's best interests.[62] But we do not understand the provisions of § 42-364(3) to indicate the Legislature either favors or disfavors joint custody. All cases governed by the Parenting Act[63] require a judicial determination, whether expressly stated or not, that the custody and parenting time arrangement ordered by the court is in the child's best interests.[64] And a hearing on the record is routinely held to facilitate that judicial determination, whether the parents are submitting an agreed-upon parenting plan for approval[65] or have contested the issues of custody and parenting time such that a trial is necessary.

[9] We conclude that a blanket rule disfavoring joint custody is inconsistent with the Parenting Act and unnecessarily

---

[59] See § 43-2923(3).

[60] See § 43-2923(4).

[61] §§ 43-2923(6) and 43-2935(1).

[62] See, also, *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 280, 777 N.W.2d 565, 571 (2010) (in paternity case, it is preferable to make express finding that order of joint custody is in best interests of child, but it is "not error under the Parenting Act in a paternity case to fail to make a specific finding of best interests").

[63] See § 43-2924.

[64] See §§ 43-2921, 43-2923(4) and (6), and 43-2935. See, also, *Dooling, supra* note 30.

[65] See §§ 43-2923(4) and 43-2935.

- 955 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

constrains the discretion of trial judges in some of the most important and difficult decisions they are called upon to make. To ensure that custody and parenting time determinations are focused on the best interests of the child, trial judges must be able to base their determinations on actual, not presumed, facts.

[10] Because a blanket rule disfavoring joint custody limits judicial discretion and may constrain the best interests of the child analysis required by the Parenting Act, we now disapprove of the *Trimble* rule and hold that joint custody is neither favored nor disfavored under Nebraska law.[66] In fact, we emphasize that no custody or parenting time arrangement is either favored or disfavored as a matter of law, and we disapprove of prior cases suggesting otherwise.

Our holding today necessarily calls into question some of our reasoning in other cases, to the extent such reasoning was premised on the rule disfavoring joint custody.[67] But today's holding does not alter the fact that whether parents come to court having agreed to a joint custody arrangement, or disputing the issues of custody and parenting time, the court is required to independently determine that any parenting plan being ordered is in the child's best interests and must reject or modify parenting plans that are not in the child's best interests or which do not meet the requirements of the Parenting Act.[68] And today's holding does not change in any respect the various factors courts should consider when deciding what sort of custody and parenting time arrangement is in a child's best interests;[69] it merely eliminates the need to also consider a blanket rule premised on generalized concerns of parental

---

[66] See *Trimble, supra* note 3.

[67] See, e.g., *State ex rel. Amanda M., supra* note 62 (noting that factual inquiry for awarding joint physical custody is substantially different from that required for making sole custody determination); *Zahl, supra* note 3. See, also, *Aguilar, supra* note 3; *Hill, supra* note 17.

[68] See §§ 43-2921, 43-2923(4) and (6), and 43-2935.

[69] See §§ 42-364(2), 43-2921, and 43-2923.

maturity, manipulative behavior by the child, and perpetuating turmoil and instability. Of course when such concerns are supported by the evidence, they will still be factors for the court to consider, along with all the other factors bearing on the child's best interests. We discuss those factors next.

### 6. Equal Parenting Time Was Not Abuse of Discretion

We turn now to the primary question on further review: whether the district court abused its discretion in creating a parenting plan that gave Mandy and Jeffery nearly equal parenting time, effectively imposing a joint physical custody arrangement. We address that question in light of the evidence adduced regarding Kaaden's best interests and disregarding our prior case law to the extent it disfavored joint physical custody.

### (a) Best Interests

[11] When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse.[70] In this case, the trial court analyzed the evidence in light of each of these factors.

[12] The Parenting Act also provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance[71] and which promotes a child's

---

[70] § 43-2923(6). See, also, *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006) (reciting rule before amendments to § 43-2923(6)).

[71] § 43-2923(1).

- 957 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

continued contact with his or her families and parents who have shown the ability to act in the child's best interests.[72]

[13] In addition to considering these statutory factors, our case law instructs that when making determinations as to the allocation of parenting time that is in a child's best interests, a trial court should also consider the parties' ability to communicate on issues such as transportation, homework, discipline, medical and dental appointments, and extracurricular activities.[73] Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child.[74] The fact that one parent might interfere with the other's relationship with the child is also a factor to consider, but is not a determinative factor.[75]

By reciting these factors, we do not suggest that each will be relevant in every case; nor do we imply that a court is prohibited from considering other factors not mentioned. No single factor is determinative, and different factors may weigh more heavily in the court's analysis depending on the evidence presented in each case. The one constant is that "[i]n any proceeding involving a child, the best interests of the child shall be the standard by which the court adjudicates and establishes . . . any custody, parenting time, visitation, or other access determinations as well as resolution of conflicts affecting each child."[76]

### (b) Kaaden's Best Interests

Here, the district court, after observing the parties and considering the evidence in light of the factors set out above,

---

[72] § 43-2923(3).

[73] See, generally, *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

[74] See *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016).

[75] *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009); *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007).

[76] § 43-2921.

- 958 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

expressly found that an alternating week-on-week-off parenting time schedule was in Kaaden's best interests. This was the parenting time schedule recommended by Kaaden's counselor, and it is consistent with the court's express factual findings that both parents are fit and provide a safe and appropriate home environment for Kaaden. Moreover, nearly equal parenting time furthered the court's stated goal of allowing Kaaden to "enjoy the full benefits of having both parents involved in his life to the greatest degree possible."

In arguing that the award of nearly equal parenting time was an abuse of discretion, Jeffery focuses almost exclusively on evidence of Mandy's animosity toward him and their difficulty communicating. In our de novo review, we neither ignore nor minimize evidence that the parties have difficulty communicating effectively regarding Kaaden's welfare, or that Mandy has significant unresolved anger toward Jeffery and actively interfered with his parenting time while the case was pending before the district court. But when all of the evidence is considered in light of Kaaden's best interests, we cannot find the parenting time awarded here was an abuse of discretion.

The trial court was appropriately concerned about Mandy's interference with Jeffery's parenting time and her unresolved anger toward him, and it addressed those concerns by awarding Jeffery sole legal custody. This minimized the need for the parties to confer regularly because Jeffery has the sole authority and responsibility to make fundamental decisions regarding Kaaden's welfare, including choices regarding his education and health. The trial court also explained that placing primary legal custody with Jeffery was the best way to ensure compliance with the parenting plan.

And despite the tense relationship between Mandy and Jeffery, the record fully supports the trial court's findings that both Mandy and Jeffery are fit and proper parents who love Kaaden and that both provide him safe and stable homes. The evidence shows both parents have developed a nurturing,

- 959 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

positive bond with Kaaden, and it fully supports the trial court's conclusion that it is in Kaaden's best interests to have both parents involved in his life to the greatest degree possible.

The trial court's alternating week-on-week-off parenting schedule served to maximize Kaaden's time with both parents and was directly supported by the testimony of his treating counselor. At the same time, the parenting schedule minimized the need for direct interaction between the parents by limiting exchanges of Kaaden to one time per week at a neutral site.

An abuse of discretion occurs when a trial court bases its decision on reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[77] Here, the trial court made detailed and specific factual findings which were fully supported by the record, and it provided a carefully reasoned explanation for why it considered the custody and parenting time arrangement to be in Kaaden's best interests.

The trial court's goal was not to find a custody and parenting time schedule the parents thought was fair, but to find one that was actually in Kaaden's best interests. That required the court to create a parenting plan for a child who has a positive and nurturing relationship with both his parents, but whose parents do not have a good relationship with each other. On this record, we find no abuse of discretion in developing a parenting plan that gave Jeffery sole legal custody and effectively imposed a joint physical custody arrangement with a week-on-week-off parenting time schedule.

### 7. Nonreimbursed Medical Expenses

[14] The Nebraska Child Support Guidelines require child support orders to address how the parents will provide for the child's health insurance.[78] Here, Jeffery was ordered to provide health insurance for Kaaden, and no party challenges that on appeal.

---

[77] *Randy S. v. Nicolette G.*, 302 Neb. 465, 924 N.W.2d 48 (2019).

[78] § 4-215.

- 960 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

The district court also ordered Jeffery to pay the first $480 of Kaaden's nonreimbursed reasonable and necessary health care expenses per year, and it ordered Mandy to pay 50 percent of such expenses in excess of $480. We understand this language to have effectively allocated responsibility for nonreimbursed health care expenses equally between Mandy and Jeffery. No party contends otherwise, and no party challenges the court's allocation of expenses *in excess of* $480. Instead, the parties focus on whether the trial court erred in ordering Jeffery to pay the first $480 of Kaaden's nonreimbursed health care expenses. We limit our analysis accordingly.

Before the Court of Appeals, Jeffery argued it was error to order him to pay the first $480 of nonreimbursed health care expenses. The Court of Appeals agreed, reasoning that the first $480 of nonreimbursed health care expenses was "subsumed within the amount of child support that is ordered."[79] The Court of Appeals thus reversed that portion of the decree. On further review, Mandy argues the Court of Appeals improperly reversed on this issue. We conclude the Court of Appeals correctly interpreted the child support guidelines.

[15] Nonreimbursed health care expenses are governed by § 4-215(B) of the child support guidelines, which states, in part, "Children's health care expenses are specifically included in the guidelines amount of up to $480 per child per year." As we have explained, "the guidelines estimate $480 as an ordinary amount of such nonreimbursed medical expenses, and that figure is then subsumed within the amount of child support that is ordered. Any nonreimbursed expenses exceeding $480 are [then] prorated between the parties."[80]

The guidelines do not require the trial court to expressly identify any party as being responsible for the first $480 of nonreimbursed health care expenses, but they do require a

---

[79] *State on behalf of Kaaden S., supra* note 1, 26 Neb. App. at 434, 920 N.W.2d at 50.

[80] *State on behalf of Martinez, supra* note 12, 281 Neb. at 552, 797 N.W.2d at 222.

- 961 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

court to allocate nonreimbursed health care expenses in excess of $480 per year "to the obligor parent as determined by the court."[81] Such allocation "shall not exceed the proportion of the obligor's parental contribution (worksheet 1, line 6)."[82] The guidelines' reference to an "obligor" refers to the party ordered to pay child support.

We therefore agree with the Court of Appeals that under the child support guidelines, the trial court erred in making Jeffery, who is the obligor under its child support calculation, responsible for paying the first $480 of Kaaden's nonreimbursed health care expenses, when such amounts are already subsumed in the monthly child support payment. The trial court may have had a sound reason for wanting Jeffery to pay such costs, but no explanation was provided in the decree, so we have no basis upon which to review a deviation from the guidelines.[83] We affirm the Court of Appeals' reversal of that portion of the decree requiring Jeffery to pay the first $480 of Kaaden's nonreimbursed health care costs.

## 8. Child Support

Because the Court of Appeals found the parenting time schedule was an abuse of discretion and remanded the matter to reduce Mandy's parenting time, it also concluded the trial court erred in using worksheet 3, the joint custody worksheet, to calculate child support. It thus reversed the child support award and remanded the matter for recalculation "using the appropriate worksheet."[84]

Mandy assigns this as error. She argues the trial court's use of worksheet 3 to calculate support was appropriate given the

---

[81] § 4-215(B).

[82] *Id.*

[83] See, generally, Neb. Ct. R. § 4-203 (rev. 2011) (child support guidelines shall be applied as rebuttable presumption, and deviations should be supported by specific findings).

[84] *State on behalf of Kaaden S., supra* note 1, 26 Neb. App. at 433, 920 N.W.2d at 50.

- 962 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

amount of parenting time she was awarded,[85] and she seeks affirmance of the child support as ordered by the district court. No party challenges any other aspect of the child support award, so we confine our analysis to whether it was error to use worksheet 3.

[16] Child support payments should generally be set according to the child support guidelines.[86] Section 4-212 of the guidelines explains when, and how, worksheet 3 is to be utilized:

> When a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year, it is a rebuttable presumption that support shall be calculated using worksheet 3. When a specific provision for joint physical custody is ordered and one party's parenting time is 109 to 142 days per year, the use of worksheet 3 to calculate support is at the discretion of the court. . . . For purposes of these guidelines, a "day" shall be generally defined as including an overnight period.

Here, the award of nearly equal parenting time effectively created a joint physical custody arrangement, and we have modified the decree and parenting plan to so describe it. Moreover, under the parenting plan, Mandy's parenting time far exceeds the rebuttable presumption of 142 overnights per year referenced in § 4-212, and Jeffery has presented no evidence or argument that would rebut the presumptive use of worksheet 3. As such, we find no abuse of discretion in the trial court's decision to use worksheet 3 to calculate child support. We reverse the Court of Appeals' holding to the contrary, and remand the matter with directions to affirm the district court's child support award.

## V. CONCLUSION

For the foregoing reasons, we modify the language of the decree and the parenting plan to reflect an award of joint

---

[85] See Neb. Ct. R. § 4-212 (rev. 2011).

[86] See *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018).

- 963 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 303 Neb. 933

physical custody. We find no abuse of discretion in the custody and parenting time arrangement ordered by the district court, and we reverse the Court of Appeals' decision to the contrary and remand the matter with directions to affirm that award as modified. We find no abuse of discretion in using worksheet 3 to calculate child support, and we reverse that aspect of the Court of Appeals' decision as well and remand the matter with directions to affirm the child support award. In all other respects, we affirm the decision of the Court of Appeals.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.