IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HERMS V. BROKAW

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHAD M. HERMS, APPELLANT AND CROSS-APPELLEE,

V.

BONITA L. BROKAW, APPELLEE AND CROSS-APPELLANT.

Filed January 28, 2020.    No. A-19-319.

Appeal from the District Court for Seward County: JAMES C. STECKER, Judge. Affirmed as modified.

Jerome J. Ortman for appellant.

Bradley E. Marsicek, of Cordell Law, L.L.P., for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Chad M. Herms appeals and Bonita L. Brokaw cross-appeals the order of the district court for Seward County which held Herms in contempt of court and awarded custody and child support for the parties' minor child. We affirm as modified as explained below.

## BACKGROUND

Herms and Brokaw began an on-and-off relationship in 2004 and are the parents of a child born in 2012. They were not together when the child was born, and from that time until they resumed their relationship in May 2014, Brokaw provided primary care for the child. After resuming their relationship, Herms and Brokaw lived together with Herms' grandmother who had dementia. Herms worked outside the home, and Brokaw stayed at home caring for the child and Herms' grandmother. Brokaw moved out and ended her relationship with Herms in September

- 1 -

2017 and went to Florida with her now-husband until the beginning of November. She left the child with Herms while she was gone. When Brokaw returned from Florida, she moved in with her now-husband who lived across the street from Herms. Brokaw and her husband were married in January 2018.

In September 2017, Herms filed a complaint for paternity, custody, and child support. In December, the district court entered a temporary order granting both parties temporary legal custody and granting Herms temporary physical custody and primary decisionmaking authority. The parties were awarded week-on-week-off parenting time.

The parties followed the alternating weekly parenting time schedule until March 2018. Throughout that time, Herms continued to contact Brokaw and tried to entice her into resuming their relationship, despite the fact that she was married. His efforts included insulting her husband and sending her flowers. In late March, Brokaw's husband contacted Herms by text message looking for Brokaw, and the text message exchange between the men escalated with Herms falsely indicating to Brokaw's husband that Brokaw was with Herms, being unfaithful to her husband. The district court later determined that Herms had instigated the incident with Brokaw's husband and described Herms' communication as "vile and hostile," done with the intent of causing discord in Brokaw's household. As a result of the exchange with Herms, Brokaw's husband, who was out of town at the time, became upset and had some of Brokaw's clothing thrown out onto the lawn.

After that incident, Herms began refusing to allow Brokaw her weekly parenting time with the child, claiming that he was concerned for the child's safety and that he had the authority to withhold parenting time from Brokaw because the temporary order granted him final decisionmaking authority. Recorded phone calls from this time period reveal that Herms intentionally withheld the child from Brokaw, threatened to call the police on her, and repeatedly told her to speak to her attorney. In April, Brokaw filed an application for order to show cause related to the denial of her parenting time, and the district court issued an order to show cause. The following month, Brokaw filed a motion to enforce parenting time, and the court granted her additional holiday time to make up for the Easter holiday time Herms refused to allow her. Brokaw's weekly parenting time with the child resumed in May 2018.

In addition to withholding parenting time from Brokaw, Herms also made educational and medical decisions for the child without consulting Brokaw. He registered the child for kindergarten in the school district close to his home in Valparaiso, Nebraska, and took her to kindergarten roundup without informing Brokaw. He also took the child for her kindergarten physical and vaccines without discussing it with Brokaw. Brokaw filed a motion with the court to allow her to enroll the child in a different school district closer to Brokaw's home. The district court granted the motion, finding that Herms' relocation to Valparaiso constituted an unreasonable burden on Brokaw and that Herms unilaterally decided to enroll the child in school there.

Trial on the issues of custody and the show cause order was held in September 2018. In addition to the events described above, the evidence revealed that Herms was living in Valparaiso and is self-employed as the owner of a trucking company, working from his home. Brokaw lives with her husband and 20-year-old daughter in Garland, Nebraska. She testified that her husband makes a sufficient income that she does not have to work and is able to be a stay at home mother. There was also evidence adduced as to Brokaw's gambling habits at a casino, which will be described in greater detail below.

Herms opined at trial that the court should award him custody of the child because he is more stable and secure, he has a home, and the child has friends with whom she attended pre-kindergarten. Brokaw expressed concern that if Herms were granted custody, he would not allow her to see the child or allow her older daughter to spend time with the child. Brokaw did not think that Herms would comply with a court order relating to her parenting time, and she did not believe that Herms would be able to coparent with her in order to make joint decisions for the child. She acknowledged, however, that the child loves Herms and needs to spend time with him too.

After trial, the district court entered an order granting the parties' stipulated motion to consolidate the case with a prior case from the district court for Lancaster County that had established Herms' paternity of the minor child and ordered child support. That child support order had been suspended in 2014 when the parties resumed their relationship and began cohabiting.

The court then entered a decree of custody and order of contempt. Therein, related to the order to show cause, the court found that Herms denied Brokaw's parenting time from March 23 to April 28, 2018. The court concluded that his arguments and testimony at trial were not credible and his reasons for denying Brokaw's parenting time were insufficient to allow him to do so. The court further found that the allegations contained in Herms' response to the application for order to show cause were not corroborated by the facts and evidence he presented at trial and were not truthful. The court determined that the evidence was clear that Herms intentionally refused to provide Brokaw with her parenting time as required by the temporary order.

Additionally, the court found that Herms instigated the events with Brokaw's husband and unreasonably used that event to justify the willful denial of Brokaw's parenting time. The court described Herms' communication with Brokaw's husband as "vile and hostile" and done with the intent of causing discord in Brokaw's household in an effort to manipulate Brokaw into resuming her relationship with him. The court concluded that Herms' behavior was "wholly inappropriate" and served no legitimate purpose, supporting a finding that Herms' denial of Brokaw's parenting time was willful. Accordingly, Herms was found to be in contempt of court.

With respect to custody of the child, the district court observed that the child appears to enjoy a good relationship with each parent and that there did not appear to be any evidence to indicate that the child is not thriving. Nevertheless, the court determined that joint legal custody could not continue due to Herms' actions and that Brokaw would be best able to provide a stable atmosphere and avoid ongoing custodial conflict. The court concluded that Herms' actions were not done in good faith for the purpose of protecting the safety of the child and that Herms had intentionally interfered with Brokaw's access to the child.

With respect to the award of joint legal and physical custody in the temporary order, the district court specifically recognized that it had intended to provide both parents with access to the child because, at that time, it appeared that Herms was making responsible decisions regarding the child's welfare. However, Herms' actions during the case caused the court "great concern" relating to Herms' ability to share the decisionmaking process with the best interests of the child in mind. The court noted that Herms made unilateral decisions regarding parenting time, education, and medical care in an effort to make it difficult, if not impossible, for Brokaw to exercise her weekly parenting time.

As a result, the court found that it was not in the child's best interests to allow Herms to have the final say in any area regarding the child. Instead, the court determined that the child's best interests would be served by awarding sole legal and physical custody to Brokaw subject to Herms' parenting time. The court observed that Brokaw was the child's primary caregiver since birth, she has appropriate housing for the child, and she will best ensure that both parents remain active and involved in the child's life. Because both parents enjoy a good relationship with the child, the court found that continuing the alternating weekly parenting time schedule was in the child's best interests. A parenting plan to that effect was attached to the decree. Herms was ordered to pay $347 per month in child support, retroactive to begin January 1, 2018. In light of the results obtained and the finding of Herms being in contempt of court, the district court ordered Herms to pay Brokaw attorney fees in the amount of $1,000.

Herms subsequently filed a motion for new trial, and Brokaw filed a motion to reconsider. The court modified the decree to divide reasonable and necessary expenses for the child proportionally between the parties, but otherwise, the parties' motions were denied. Herms now appeals and Brokaw cross-appeals.

## ASSIGNMENTS OF ERROR

Herms assigns, consolidated and renumbered, that the district court erred in (1) awarding legal and physical custody of the minor child to Brokaw, (2) failing to recognize that it had given him final decisionmaking authority in the temporary order, and (3) ordering retroactive child support.

On cross-appeal, Brokaw assigns, consolidated and renumbered, that the district court erred in (1) awarding the parties equal parenting time, (2) denying her motion to reconsider on the basis of equal parenting time, (3) awarding child support using the joint custody worksheet, and (4) awarding her only $1,000 in attorney fees.

## STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

*Legal and Physical Custody.*

Herms assigns that the district court abused its discretion in awarding legal and physical custody of the child to Brokaw. He argues that Brokaw is unemployed and not able to provide a stable environment for the child.

- 4 -

Under the Parenting Act adopted by the Nebraska Legislature, Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2018), the concept of child custody encompasses both legal custody and physical custody. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019); § 43-2922(7). Legal custody focuses entirely on decisionmaking authority and is defined as the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health. *State on behalf of Kaaden S. v. Jeffery T., supra*; § 43-2922(13).

Here, the record establishes that the parties have a difficult time communicating and have disagreed on fundamental decisions such as where the child should attend school. Perhaps more importantly, Herms utilized the final decisionmaking authority granted to him in the temporary order to make fundamental decisions about the child without informing or consulting Brokaw. The district court made clear its disapproval of Herms' actions and expressed concern regarding his ability to share the decisionmaking process with the best interests of the child in mind, noting the unilateral decisions he made regarding parenting time, education, and medical care. Brokaw likewise expressed concern at trial that Herms would not work with her to make joint decisions for the child. Accordingly, the district court found that joint legal custody could not be maintained and that it would be in the child's best interests to award Brokaw sole legal custody. Based on the record before us and the court's reasoning, we cannot find that this decision was an abuse of discretion.

Herms argues that the court failed to recognize that it had given him final decisionmaking authority in the temporary order and then appeared to punish him for using that authority to move the child away from the "explosive situation" that was occurring at Brokaw's residence. Brief for appellant at 29. Contrary to Herms' argument, however, the district court determined that Herms' actions were not done in good faith for the purpose of protecting the safety of the child. It found his reasons for withholding parenting time from Brokaw were not credible or supported by the evidence.

Moreover, the court specifically noted that it granted the parties temporary joint legal custody because it appeared that Herms was making responsible decisions regarding the welfare of the child, but that Herms' actions during the case caused the court "great concern" that he was making unilateral decisions regarding the child in an effort to make it difficult for Brokaw to exercise her parenting time. The court therefore found that it was not in the child's best interests to continue to afford Herms the final say in any area regarding the child's welfare. Given the court's factual finding that Herms used his final decisionmaking authority to interfere with Brokaw's parenting time rather than working with her for the best interests of the child, we find that awarding sole legal custody to Brokaw was not done as a punishment for Herms exercising his final decisionmaking authority, but, rather, because it was in the best interests of the child to do so.

The district court also stated that it was awarding sole physical custody of the child to Brokaw but awarded the parties nearly equal parenting time in the form of an alternating week-on-week-off schedule. Such a schedule meets the statutory definition of joint physical custody. See *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Where a parenting plan effectively establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement. *Id.*

It is the district court's allocation of parenting time that drives the physical custody label, not the other way around. Therefore, regardless of the label used in the decree and parenting plan to describe physical custody, the district court here effectively imposed a joint physical custody arrangement by creating a week-on-week-off parenting time schedule. See *id*. For the sake of clarity, as the Nebraska Supreme Court did in *State on behalf of Kaaden S. v. Jeffery T.*, we modify the language of the decree and parenting plan to reflect this holding. Based on this finding, we reject Herms' argument that the court abused its discretion in awarding sole physical custody to Brokaw.

Herms argues that he should have been awarded sole physical custody of the child, and on cross-appeal, Brokaw asserts that the court abused its discretion in awarding equal parenting time to the parties and, relatedly, erred in denying her motion to reconsider on this basis. We must therefore consider whether the district court abused its discretion in creating a parenting plan that gave the parties nearly equal parenting time, effectively imposing a joint physical custody arrangement. See *State on behalf of Kaaden S. v. Jeffery T., supra*.

When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. § 43-2923(6); *State on behalf of Kaaden S. v. Jeffery T., supra*. The Parenting Act also provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. § 43-2923(1) and (3); *State on behalf of Kaaden S. v. Jeffery T., supra*.

In addition to considering these statutory factors, our case law instructs that when making determinations as to the allocation of parenting time that is in a child's best interests, a trial court should also consider the parties' ability to communicate on issues such as transportation, homework, discipline, medical and dental appointments, and extracurricular activities. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. *Id*. The fact that one parent might interfere with the other's relationship with the child is also a factor to consider, but is not a determinative factor. *Id*.

In the present case, the district court determined, and the evidence supports a finding, that the child appears to enjoy a good relationship with each parent and there is no evidence to indicate that the child is not thriving. Therefore, the court determined that continuing the week-on-week-off parenting time arrangement was in the child's best interests. In its order denying Brokaw's motion to reconsider the parenting time arrangement, the court reiterated that because the child has a good relationship with both parents, it is in the child's best interests to maintain the week-on-week-off schedule.

Despite this, the court recognized and emphasized Herms' actions throughout the pendency of the case. As described above, the court found that Herms intentionally denied Brokaw her

parenting time with the child and instigated a text message confrontation with Brokaw's husband, communicating with him in a "vile and hostile" manner in an effort to cause discord in Brokaw's household and manipulate Brokaw into resuming her relationship with him. The court further found that Herms' behavior was wholly inappropriate, served no legitimate purpose, and was not done in good faith for the purpose of protecting the safety of the child, as Herms claimed.

As in *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019), the district court was appropriately concerned about Herms' actions and interference with Brokaw's parenting time, and it addressed those concerns by awarding Brokaw sole legal custody. This minimized the need for the parties to confer regularly because Brokaw has the sole authority and responsibility to make fundamental decisions regarding the child's welfare, including choices regarding her education and health. See *id*. The district court also explained that placing sole legal custody with Brokaw was the best way to ensure that both parents remain active and involved in the child's life.

Herms argues that he should have received custody of the child because Brokaw was morally unfit due to her gambling habits and the unstable situation in which she lives. There was evidence adduced at trial regarding Brokaw's gambling at casinos during her relationship with Herms. While she was living with Herms, Brokaw would go to the casino several times per week, occasionally spending all night gambling. She admitted that she lost more money gambling than she ever won, and she acknowledged borrowing money from a man at the casino, for which he eventually obtained a judgment against her for more than $16,000. Brokaw acknowledged that she continued to gamble regularly into 2017, but said that she did not go to the casino as often after she and Herms broke up. She explained that while she and Herms were together, she often went to the casino to get away from him and to get out of the house after taking care of the minor child and Herms' grandmother alone all day. As of the time of trial in September 2018, however, Brokaw testified that she goes to the casino once every few months and had been there only four or five times in 2018.

At trial, both parties presented evidence concerning their own parenting strengths and the weaknesses of the other including their respective living situations. The district court heard the evidence and determined that Herms' arguments and testimony about his concern that Brokaw's living situation was not safe for the child were not credible. The court also made clear that its concerns with respect to Herms outweighed any concerns regarding Brokaw. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014). In fact, in contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Id*.

Although the parties have a strained relationship with each other, they both appear to love and care for the child, and the evidence indicates they each have a close relationship with her and that she is thriving. Given the evidence presented at trial, our standard of review, and deference to the district court's observation of the witnesses and assessment of the evidence, we find no abuse

of discretion in developing a parenting plan that effectively imposed a joint physical custody arrangement with a week-on-week-off parenting time schedule.

Relatedly, Brokaw assigns on cross-appeal that the district court erred by using the joint custody worksheet to calculate child support. Her argument, however, depends on a finding of error in the award of joint physical custody. Because we have found no abuse of discretion in the parenting time allocated to the parties, we find no abuse of discretion in the use of the joint custody worksheet.

*Attorney Fees.*

Brokaw argues on cross-appeal that the district court erred in awarding her only $1,000 in attorney fees. We disagree.

As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Id.* Attorney fees and costs are statutorily allowed in paternity and child support cases. *Id.* See, also, Neb. Rev. Stat. § 43-1412(3) (Reissue 2016). Costs, including reasonable attorney fees, can be awarded in a contempt proceeding. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Finney v. Finney*, 273 Neb. 436, 730 N.W.2d 351 (2007). An award of attorney fees in a paternity action is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019).

Here, the district court awarded Brokaw $1,000 in attorney fees in light of the results obtained and the finding of Herms being in contempt of court. Brokaw was the prevailing party in that the court held Herms in contempt and awarded her sole legal custody and resumed child support. However, she did not prevail in her request for sole physical custody with Herms receiving parenting time on alternating weekends.

We recognize that Brokaw incurred additional attorney fees due to Herms' actions in denying her parenting time and enrolling the child in school without consulting Brokaw. But we also emphasize that determining an appropriate award of attorney fees is within the discretion of the trial court, and in reviewing the court's decision, we do not determine whether we would have awarded the same amount but whether the trial court's order constitutes an abuse of discretion. Based on the record before us and our standard of review, we conclude that the court did not abuse its discretion in awarding Brokaw $1,000 in attorney fees.

*Remaining Issues.*

Herms also assigns that the district court erred in ordering him to pay retroactive child support. His sole argument, however, is "neither party should be ordered to pay any child support, or in the alternative [Brokaw] should be ordered to pay $50.00 per month pursuant to the Nebraska Child Support Guidelines, as she is currently not working." Brief for appellant at 29. To be

considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018). Because none of the issues related to child support are both specifically assigned and specifically argued in Herms' brief, we decline to address them.

CONCLUSION

We modify the language of the decree and the parenting plan to reflect an award of joint physical custody. The district court's order is otherwise affirmed.

AFFIRMED AS MODIFIED.