IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BRODERICK V. EISENBERG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PATRICK BRODERICK, APPELLEE,

V.

MADISON EISENBERG, APPELLANT.

Filed June 16, 2020.    No. A-19-1064.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Jeffrey A. Wagner and Kyle J. Flentje, of Wagner, Meehan & Watson, L.L.P., for appellant.

David J. Myers, of Berkshire & Burmeister, for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Madison Eisenberg appeals an order of the District Court of Douglas County, granting her and Patrick Broderick joint legal and physical custody of their minor child, establishing Nebraska as the home state of the child, and requiring Madison to return the child from Florida to Nebraska. For the following reasons, we affirm.

## BACKGROUND

Cohen is the son of Madison and Patrick and was born in January 2019 in Omaha, Nebraska. Madison and Patrick were never married, but entered into a relationship in 2018. Sometime in the summer of 2018, Madison told Patrick that she was pregnant with his child. At this time, Madison was living in a house she owned in Omaha and Patrick lived with his parents,

- 1 -

also in Omaha. Madison and Patrick discussed things like naming the baby, and Patrick attended one of the prenatal appointments. He did not attend any birthing classes.

Patrick was at the hospital for Cohen's birth and spent time at the hospital during the following days while Madison and Cohen remained in the hospital. After Cohen was born, Patrick saw Cohen regularly, but Madison controlled when and where Patrick visited Cohen. Madison invited Patrick to Cohen's newborn and 2-week doctor appointments, but he did not attend.

In the fall of 2018, before Cohen's birth, Madison told Patrick that she was thinking about moving to Florida. Madison began the process of selling her home in September. Patrick contends that by November, Madison had stopped talking about moving to Florida and told Patrick's parents in December that she intended to coparent Cohen in Omaha. However, Madison claims the parties again discussed her move in the beginning of January 2019.

On February 13, 2019, Patrick filed a Complaint to Establish Paternity and Custody. Madison was served with the complaint on February 20, the morning before she left for Florida with Cohen.

Initially, at the time of Madison's February 2019 trip to Florida, she intended to only go on a 1-week vacation before returning to Nebraska and then officially moving to Florida in March. However, Madison did not return from her Florida vacation and initially cut off communication with Patrick for over a month. On March 19, Patrick filed a motion for temporary orders, including for genetic testing to establish paternity, for temporary joint legal and physical custody, for temporary visitation, and for an order prohibiting the removal of Cohen from Nebraska during the pendency of the action. On March 22, Madison answered the complaint and also filed a motion to dismiss on the basis of subject matter jurisdiction and inconvenient forum. On April 16, the district court entered an order taking Patrick's motion for temporary custody under advisement pending a further hearing, denying Madison's motion to dismiss, and ordering genetic testing to be completed. The court filed a scheduling order on July 1, setting the trial for October 1. Although there is no order in the transcript presented on appeal regarding a further hearing on Patrick's temporary motion, the district court apparently set some type of visitation schedule for Patrick before trial, beginning in July. Between February 20 and July, Patrick had been unable to see Cohen.

A bench trial was conducted on October 1, 2019. Madison renewed her motion to dismiss which was again overruled. Madison, 22 years old at the time of trial, had lived in Omaha her entire life until her move to Florida. Her mother moved to Florida in July 2017, at which time Madison began living on her own in a small one-bedroom house that was given to her by her great uncle who lives in Tekamah, Nebraska. She sold the house and moved in with a friend in January 2019. Madison also has a grandmother in Omaha, but they do not have a strong relationship. Madison was able to work as a bartender throughout her pregnancy while living in Omaha. Although she had purchased a round trip ticket for her initial trip to Florida in February, she did not return as she was "afraid that [Patrick] was trying to use the Court and lawyers to force me to stay after I had already had arrangements to move." According to Madison, she had intended to return to Nebraska for Cohen's 6-week checkup before permanently moving to Florida in March.

In Florida, Madison rents a home from her mother that is behind the house her mother, stepfather, and brother live in. In addition, her paternal grandfather, her uncle, and two cousins live in Florida. Madison has a job in Florida as a bartender and server, working around 20 hours a

week. While Madison is at work, her mother is able to care for Cohen. Madison hopes to go to cosmetology school to become an aesthetician.

Along with being close to family, Madison wants to stay in Florida because Cohen would be able to attend preschool for free and she has strong religious support in the community, as her Jewish religion is important to her. She thinks the school system is "great," and feels that the community is smaller and safer than Omaha.

Madison testified that Patrick had limited contact with Cohen after his birth despite her offers to have him visit at her friend's house. When he did visit, he would hold Cohen and be on his phone at the same time. When Cohen would wake up or be fussy, Patrick would hand him back to Madison. Before Patrick filed the complaint, Madison believed that he was agreeable to her moving to Florida with Cohen. She is willing to work with Patrick to ensure he gets as much time as possible with Cohen if allowed to remain in Florida. Madison's mother testified that Madison had visited Florida in September 2018, at which time they viewed the home that was eventually purchased in January 2019 for Madison and the baby to live in. It is a nice sized house with a fenced-in yard. Two friends of Madison testified, confirming Madison's plans to move to Florida and that Madison was a good mother.

Patrick was born in Hawaii and moved to Omaha when he was in preschool. He lived and went to college in Lincoln, Nebraska, for a couple of years after high school, but he returned to Omaha and is living with his parents. He has several other family members living in the area, including an aunt and uncle, his sister and her husband, a nephew and niece, and cousins. At the time of trial, Patrick was 23 years old, attending the University of Nebraska at Omaha part time studying construction management, and he had a part-time job at a health club. He expects to graduate in the fall of 2021. His goal is to work for an engineering firm in Omaha.

Patrick testified about his visitations with Cohen between July and the time of trial. Two visitations occurred in Omaha and one in Florida. Patrick described his care of Cohen, felt that Cohen seemed comfortable with him, and indicated that he is a "happy baby" when they have been together. Madison was breastfeeding Cohen and would supply Patrick with bottles of breast milk during his visitation.

Patrick testified that he wants Cohen to be returned to Nebraska so that he can be an involved father. Patrick's family is very close and spend a lot of time together, which would be a benefit to Cohen. Patrick indicated that Cohen would be able to have his own bedroom in the house that Patrick lives in with his parents and that his mother could provide childcare for Cohen free of charge while he is in class or working. According to Patrick, removing Cohen from Nebraska would have a "devastating" impact on their relationship as the 1,500-mile distance would result in them having little time together. Patrick believes that it would be in Cohen's best interests to come back to Omaha.

Patrick's parents each testified. They met Madison at a family dinner at their home in November 2018. Even though Madison and Patrick were "not together," they discussed how they were going to coparent the child. Madison did not indicate that she was planning to move to Florida. Patrick's parents offered to help with the baby, including providing childcare if needed. Patrick's mother testified that he has "stepped up as a dad" and takes care of Cohen's needs when he has visitation with him in their home.

The district court made certain findings from the bench at the conclusion of trial regarding the best interests of Cohen which we discuss in further detail below. A written decree was entered on October 17, 2019. The order established that Nebraska is Cohen's home state for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act. The court ordered Madison to return Cohen to Nebraska no later than December 1. Further, the court determined that it was in the best interests of Cohen that Patrick and Madison have joint legal and physical custody of Cohen and a parenting plan was adopted where the parenting time was divided on a weekly basis (alternating 2/2/3 days). Neither party was required to pay child support. Madison now appeals.

ASSIGNMENTS OF ERROR

Madison assigns that the district court abused its discretion in awarding joint custody of Cohen to the parties and in ordering Madison and Cohen to return to Nebraska, as it is contrary to Cohen's best interests.

STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

*Joint Physical Custody.*

Madison argues that the district court abused its discretion in ordering joint physical custody of Cohen because it is in Cohen's best interests to be in the primary care of his mother.

Joint physical custody is neither favored nor disfavored under Nebraska law, and, in fact, no custody or parenting time arrangement is either favored or disfavored as a matter of law. *State on behalf of Kaaden S. v. Jeffery T., supra*. The paramount consideration in determining child custody is the best interests of the children. *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017). When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016).

In addition to these statutory "best interests" factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect

on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

The Parenting Act also provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. § 43-2923(1) and (3).

Here, Cohen was only 8 months old at the time of trial. Madison and Cohen lived in Omaha for approximately 3 weeks after Cohen's birth during which time Patrick was able to visit Cohen, albeit only at Madison's residence with her present. Thereafter, Madison took Cohen to Florida and cut off communication with Patrick for approximately 1 month. Patrick was not able to secure visitation with Cohen until July 2019; visitation occurred twice in Omaha and once in Florida prior to trial. Although it is true that Madison has been Cohen's primary caregiver during his infancy, that position resulted from her removal of Cohen from Nebraska. During the time that Patrick was able to physically visit Cohen, he was able to take on an active parenting role. Further, no evidence was presented at trial showing either party was an unfit parent.

In discussing Cohen's best interests at the conclusion of the trial, the district court concluded that it was in his best interests to return to Nebraska and for the parents to share joint custody. In making this determination, the court noted that at Cohen's "tender age," he needed both parents. The court found that it was "really important" for Patrick to be able to bond with Cohen through daily contact.

Upon our de novo review of the record, we cannot say that the district court abused its discretion in awarding the parties joint physical custody of Cohen. We give weight to the fact that the district court heard and observed the witnesses. *State on behalf of Kaaden S. v. Jeffery T., supra*. As recognized by the district court, Madison and Patrick are young parents, Cohen was still an infant at the time of trial, and establishing a close bond with both parents at this early stage would be beneficial to Cohen. And, as we conclude below, establishing a bond with both parents through joint physical custody is not possible at this time unless Madison and Cohen return to Nebraska.

*Return to Nebraska.*

Madison assigns error to the district court's order that she return Cohen to Nebraska.

This court has held that Nebraska's removal jurisprudence does not apply to a child born out of wedlock where there has been no prior adjudication addressing child custody or parenting time. *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009). However, we recognized that it was appropriate to examine three broad considerations in considering whether removal is in a child's best interests: (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the children and the custodial parent; and (3) the impact such a move will have on contact between the children and the noncustodial parent, when viewed in the light of reasonable visitation. *Id*.

In examining the first consideration emphasized by *Coleman*--each party's motives for seeking or opposing the move--the district court acknowledged that Madison wanted to move to Florida in order to have a family support system while Patrick opposed the move in order to be

near Cohen. The court concluded that Patrick's desire for daily contact and being able to parent Cohen outweighed Madison's desire to be around family. In examining the second consideration regarding quality of life, the district court noted that while Madison's quality of life may be better in Florida, it could not "necessarily make that leap that [living in Florida] enhances the quality of life for Cohen, especially at his tender age, because I believe he needs both of his parents." Finally, with respect to the third *Coleman* factor--the impact allowing Cohen to move to Florida on his contact with Patrick--the court found that such a move, involving a distance of 1,500 miles, would clearly have a negative impact on their relationship. Recognizing that both parents were young and not yet established in their careers, the court found that it made the most sense to bring Cohen back to Nebraska. For these reasons, the district court concluded that it was in Cohen's best interests to be returned to Nebraska.

Upon our de novo review of the evidence we cannot say that this determination amounts to an abuse of discretion. It is clear that the district court appropriately examined the factors under *Coleman* in requiring Madison to return Cohen to Nebraska. We note that the court's comments at the conclusion of the trial indicate the struggle it had with balancing the factors in this case, particularly given the parent's young ages and the possible change in circumstances once they finish any further education and get settled in their future careers. The court correctly concluded that it could not speculate regarding the future but had to determine the best interests of Cohen at this point in time. The court clearly found it important for Cohen to have regular and frequent contact with both parents, which it determined could best occur in Nebraska. We agree.

CONCLUSION

For the above stated reasons, we affirm the decision of the district court awarding joint physical custody of Cohen to Madison and Patrick and ordering the child to be returned to Nebraska.

AFFIRMED.