IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HENSON V. CAROSELLA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ZACHARY JAMES HENSON, APPELLANT,

V.

ALICIA MICHELLE CAROSELLA, APPELLEE.

Filed November 24, 2020.    No. A-20-096.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Keith S. Filewicz and Stacy A. Witt, of Filewicz & Witt, for appellant.

Mark F. Jacobs, of Anderson, Bressman, Hoffman & Jacobs, P.C., L.L.O., for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Zachary James Henson appeals from a decree of dissolution entered by the district court for Douglas County, which dissolved his marriage to Alicia Michelle Carosella, divided the marital assets and debts, awarded Alicia sole physical custody of the parties' minor child, and ordered Zachary to pay $890 per month in child support. On appeal, Zachary challenges the district court's decision to award Alicia sole physical custody, grant her the majority of parenting time, and award child support based on his current level of income. For the reasons that follow, we affirm the district court's decision as to custody, parenting time, and the award of child support.

## BACKGROUND

Zachary and Alicia dated for 8 or 9 months before marrying in July 2018. They had one child together, Forrest, who was born in December 2018. The parties separated in May 2019.

- 1 -

Zachary filed a complaint for dissolution of marriage on May 24, 2019, seeking joint legal and physical custody of Forrest. Alicia filed an answer and counterclaim where she initially sought joint legal but sole physical custody of the minor child. She then filed an amended counterclaim in which she sought sole legal and physical custody. A stipulated temporary order of custody, child support, and parenting time was entered by the court on June 14, 2019. The stipulated temporary order awarded the parties with joint legal custody, but awarded Alicia sole physical custody subject to Zachary's parenting time. The temporary order provided Zachary with parenting time each Saturday night from 6 p.m. through Sunday night at 6 p.m. and Mondays and Wednesdays from 4 p.m. until 7 p.m. Zachary was also ordered to pay $745 per month in child support.

On August 9, 2019, Zachary filed a motion for temporary allowances asking for joint physical custody because Alicia was no longer staying at home with Forrest. Zachary contended that he entered into the original stipulated temporary order which provided Alicia with sole physical custody only because Alicia was still breastfeeding Forrest at that time and was staying at home with him. Zachary's motion was denied because the court determined the number of "quality hours" available for Zachary to spend with Forrest was insufficient and did not merit a change of custody or parenting time. Zachary again filed a motion to amend the stipulated temporary order on September 5, where he alleged that he adjusted his work hours so that he would only have to be at work at 6 a.m. on Saturdays. No specific action is apparent in the record regarding this motion, but a stipulated modified temporary order was entered following the filing of another temporary motion on September 24. The only change in this order related to which evenings each week were utilized for Zachary's visitation. The court subsequently set the case for trial which was held on November 13 and 15.

During the trial, Zachary presented the testimony of friends and family who all testified that he was a good father and that they would entrust their children into his care. His friend and mother both testified that Forrest was dressed appropriately and clean when they saw Forrest with Zachary. Another witness, who had known Alicia for 7 years, testified that he believed Zachary was a good father. Zachary's mother also acknowledged Alicia to be a good mother but testified that, in her opinion, it is in the best interests of Forrest to have a relationship with both Zachary and Alicia.

Alicia presented evidence that it was not in the best interests of Forrest for Zachary and Alicia to have joint physical and legal custody. Alicia's mother testified that Alicia is a good mother and has no concerns about Forrest being parented just by Alicia. Alicia testified that while Zachary and Alicia were married, she performed most of the parenting duties. Zachary only occasionally fed a bottle to Forrest or changed his diapers. She further testified that when they were still together, when Zachary arrived home, he frequently would go to the gym for several hours and did not return until Forrest was already asleep or about to go to sleep.

Alicia also believed that joint physical custody would increase the amount of time that Forrest would spend in daycare. She also testified that Forrest has an established schedule and routine when he is with her. Forrest's current bedtime was around 7:30 to 8 p.m. and he would wake up between 7 and 8 a.m. Noting that Zachary has to be at work by 6 a.m., she testified that if Forrest was in Zachery's care, he would have to wake up extremely early so as to allow Zachary to arrive at work on time. Forrest would be in a childcare provider's care from approximately 5:30

a.m. until close to 4 p.m. Because of Zachary's work schedule, Alicia believed that joint physical custody with more parenting time for Zachary would disrupt Forrest's schedule or routine.

Zachary testified that he works through a union and has worked for various contractors. He is a steamfitter and is in the fifth year of his 5-year training, at which point he will become a journeyman. He currently is contracted to work for Mainelli Mechanical. Zachary's current work schedule requires him to work from 6 a.m. until 3:30 p.m., Monday through Friday, and every Saturday from 6 a.m. until 2:30 p.m. However, Zachary testified that if he was granted joint physical custody, his goal would be to reduce his hours.

Zachary's foreman, Derek Sik, testified that he has worked with Zachary in the past to change his schedule to adjust for different parenting time arrangements. Sik testified at trial that he would try to work with Zachary to adjust his schedule in the future to accommodate a new custody arrangement. However, upon questioning by the court, Sik conceded that any changes in Zachary's schedule would be a reduction in hours and would require him to move to a different job site. Sik initially testified that the overtime hours on weekdays and Saturdays were not mandatory. But he later explained that if Zachary wanted to work that specific job, he would have to work the extra hours including the hours on Saturdays. Sik testified that Zachary would not be able to work only 40 hours per week at his current job. Sik also testified that Zachary had been offered a different job where he would only work 40 hours per week but Zachary had not chosen to take that job as of the time of trial.

Zachary also testified that he temporarily reduced his hours to 40 hours per week during the pendency of this action, but due to the reduction in pay, he could not keep up with his expenses. Zachary testified that his income historically had fluctuated particularly in the winter months. However, at his current job, Sik testified that the building that they are working on would take until 2035 to complete. As a result, Zachary's hours were unlikely to be reduced so long as he stayed on his current job site.

Zachary testified that his income was approximately $42,000 in 2017 and $50,000 in 2018. The child support calculation presented by Alicia listed Zachary's income in excess of $80,000 per year. While he objected to this amount being used for his child support calculation, Zachary's paystubs entered into evidence demonstrated that over the period he had worked at his current job site, he earned $35,843. When annualized over the course of 52 weeks, Zachary conceded that his annual income would be $88,756 based on these paystubs. On cross-examination, Zachary acknowledged that he completed interrogatories in preparation of trial stating that he earned $8,216 gross per month, on average. In addition, Zachary presented evidence that his pay will increase once he becomes a journeyman.

Alicia noted that the parties had experienced difficulty in communicating about issues involving Forrest. Alicia believed that Zachary has taken Forrest to "unnecessary doctors' appointments." While Alicia had served as the primary contact for Forrest for health care, Zachary tried to change the contact information. Alicia was notified by Forrest's doctor's office about a doctor's appointment scheduled by Zachary, but not communicated to her. Alicia also testified that she believed she would continue to have problems communicating with Zachary about daycare if she did not receive sole legal custody.

Zachary testified that after their separation, daycare became a contentious issue between himself and Alicia. Zachary did not want Forrest to go to a commercial daycare center, but rather wanted Forrest to be watched by family. However, Alicia and Zachary could not agree on having their family members watch Forrest. Alicia previously proposed having her mother care for Forrest, which Zachary rejected. Zachary's mother testified that she would be able to watch Forrest because she could reduce her hours for work, but Alicia would not agree to her being the care provider. Alicia testified that she proposed four or five different options for daycares and Zachary refused to tour any of them. According to Alicia, when she sent text messages to Zachary regarding daycare, Zachary simply refused to respond to her questions. Zachary testified that he specifically did not want Academic Adventures to be Forrest's daycare because Academic Adventures had experienced an investigation for lack of supervision. However, Forrest was enrolled by Alicia in Academic Adventures. Both Alicia and the director of Academic Adventures testified to the safety measures taken for the well-being of the children enrolled there. Alicia instructed the daycare not to release Forrest to Zachary unless Alicia was notified beforehand. Zachary has not been denied the ability to pick up Forrest, but has been delayed in picking up Forrest while the daycare waited for a response from Alicia. Zachary was ordered to pay a percentage of childcare expenses but as of the date of trial, had not made any payments. According to text messages sent to Alicia, Zachary refused to pay based on his opposition to Forrest being placed in a childcare center. Zachary testified that since starting daycare, Forrest had a cough and runny nose for 4 months. Alicia testified that the runny nose and cough were a result of allergies.

Alicia, Zachary, and other witnesses all testified to the tumultuous nature of the parties' relationship. Zachary testified that the relationship was contentious throughout, but seemed to be better after Forrest was born. Zachary and Alicia went to see a marriage counselor because Zachary believed Alicia's behavior was erratic. In addition, Zachary believed that Alicia did not take criticism or advice well. One witness observed an argument between Zachary and Alicia and heard a slap. This argument occurred after Alicia drank a bottle of wine. There was other evidence that Alicia drank alcohol while parenting Forrest, including pictures of her with alcohol in the background. On cross-examination, she conceded there were pictures of her with Forrest and with alcohol. Alicia denied that she was impaired on these occasions and testified that Zachary was present and also drinking on three of the four occasions depicted.

Alicia believed that Zachary had an anger control issue. Zachary admitted to consulting with a therapist on this issue. Alice Niess, who lives with Zachary's father, testified to an incident where she arrived at Zachary's home unexpectedly and there was another woman there. According to Niess, Zachary began to yell at her about why she was there.

Alicia filed for a protection order against Zachary in May 2019 during the pendency of the dissolution proceedings. After filing for the protection order, Alicia had Forrest for 12 days before Zachary saw Forrest again. Alicia told Zachary that she was afraid Zachary would take Forrest and not give him back. Alicia testified as to the details of the incidents contained in her affidavits. These incidents included Zachary threatening to throw all of her personal possessions into the yard, picking up a bassinet and slamming it to the floor, driving recklessly while angry with she and Forrest in the car, throwing trash all over the porch of the marital residence, punching doors and windows, and shoving her down onto a couch forcefully resulting in an injury and bleeding. She

also noted that at a parenting exchange, Zachary refused to give Forrest to Alicia and the police were called. At another exchange, he tried to forcibly grab Forrest away from her.

Alicia ultimately dismissed her application for the protection order voluntarily. At trial, Zachary denied any instances of abuse that would have led Alicia to file a protection order against him. Despite her allegations of abuse and neglect accompanying her protection order applications, she stated in her temporary child information affidavit that there were no circumstances of child abuse, neglect, domestic abuse, or unresolved conflict with Zachary that would justify any limitation on custody, parenting time, visitation, or other access with Forrest. At trial, she stated that she denied these incidents in her affidavit because she and Zachary were trying to reconcile.

Zachary testified to Alicia's concerns that Zachary was using steroids. He testified that he took testosterone because he had low testosterone. On cross-examination, however, he admitted that he also used testosterone pursuant to his participation in bodybuilding competitions. Alicia also testified that Zachary had been using steroids and that she found needles and bottles containing a steroid solution in the house. According to Alicia, Zachary obtained the steroids from a friend. Alicia's mother, a registered nurse, testified that Zachary asked her for needles in 2019 because he was going to use steroids again. Alicia testified that during periods of time that Zachary did not use steroids, he was less angry and aggressive.

At the close of trial, the district court found that it had jurisdiction over the parties and the subject matter of the case and found that the marriage was irretrievably broken and should be dissolved. The court took the case under advisement and stated that it would announce its findings in open court on a later date. The court explained that with regard to custody and parenting time, its decision would be based upon what is the best interest of the child.

At some point thereafter, counsel for the parties met with the court and the court informed them of its findings. However no record was made of this hearing. On January 6, 2020, a hearing was held on the record based on Zachary's motion for the court to enter a decree. A decree was entered on January 27, 2020. In the decree, both parents were found to be fit and proper persons to have legal and physical custody of Forrest. The court found that it was in the best interests of Forrest that the parents have joint legal custody with Alicia having final decision making authority in the event of a disagreement. Alicia was awarded sole physical custody subject to Zachary's parenting time. The court specifically found that Zachary's work schedule required him to work Monday through Friday from 6 a.m. until 3:30 p.m. and on Saturdays from 6 a.m. until 2:30 p.m. and thus was not "reasonable" as far as the best interests of the child were concerned. The court noted that a "reasonable" schedule would approximate a workday from 8 a.m. until 5 p.m. Zachary was awarded parenting time every other weekend from 4 p.m. Friday until 7 p.m. on Sunday as well as every Tuesday and Thursday from 4 p.m. until 7 p.m. Holiday and summer parenting time were also awarded. The court further found that if Zachary were to change his work schedule to a "reasonable" schedule, such a change may constitute a material change in circumstance for purposes of modifying the order of custody or increasing his parenting time. Zachary was ordered to pay $890 per month in child support. Zachary now appeals to this court.

ASSIGNMENTS OF ERROR

On appeal, Zachary's assignments of error, consolidated and restated, are that the district court erred in (1) awarding sole physical custody to Alicia and not granting him equal parenting time, (2) calculating its award of child support, and (3) not making a complete record of the final hearing at which the decision was announced. However, Zachary makes no argument in support of his claim that the district court erred in not making a complete record of its findings. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). Because Zachary does not argue how the district court erred by not making a complete record, we will not consider this assignment of error.

STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004). In reviewing a custody determination de novo on the record, we reappraise the properly admitted evidence as presented by the record and reach our independent conclusion with respect to the issue presented. *Id.* However, where the credible evidence is in conflict on a material issue of fact, we will consider and give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

An abuse of discretion occurs when a trial court bases its decisions upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007).

ANALYSIS

*Custody.*

In his brief on appeal, Zachary argues that the court erred in awarding sole physical custody to Alicia because both parents were fit. He also argues that the parenting plan was not in the best interest of Forrest. Finally, he argues that the award of custody and the parenting plan violated his fundamental right to parent his child. We address these issues in turn.

When custody of a minor child is an issue in a dissolution proceeding, child custody is determined by parental fitness and the child's best interests; and when both parents are found to be fit, the inquiry for the court is the best interests of the children. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based

on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Kashyap v. Kashyap*, 26 Neb. App. 511, 921 N.W.2d 835 (2018). No single factor in the best interests analysis is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020).

The district court in this matter determined that both parents were fit and that neither Alicia nor Zachary seriously or specifically contended that the other parent was an unfit parent. Accordingly, custody ought to be devised to advance the best interests of the children.

We find that the court did not abuse its discretion in awarding sole physical custody of Forrest to Alicia. The evidence at trial showed that Alicia was the primary caretaker of Forrest. Zachary occasionally changed diapers or fed a bottle while the parties were together, but Zachary worked long hours and often spent additional hours away from the home at the gym. This left Alicia in charge of the daily care of Forrest.

Following their separation, the evidence demonstrates that Alicia worked slightly less while Zachary for the most part continued to work long hours which began very early in the morning. Alicia continued to be the primary caregiver and decision maker as to necessary medical care and daily care. The parties could not agree on home-based childcare. Alicia eventually enrolled Forrest in a childcare center that was within walking distance of her workplace. Though court ordered to do so, Zachary refused to pay his portion of the childcare expenses. This contributed to Alicia's financial hardship and need to temporarily live with her mother. The record revealed imperfections on the part of both Alicia and Zachary. Zachary emphasized that Alicia would drink on occasion even while pregnant or breastfeeding. Alicia emphasized Zachary's use of nonprescribed steroids and anger control issues. We must note that in evaluating the child's bests interests, courts are also directed to consider credible evidence of domestic abuse.

The district court made no finding that domestic abuse had occurred in this case. Alicia offered some evidence that Zachary engaged in acts of domestic abuse, but Zachary denied such allegations. He did acknowledge the contentious nature of the parties' relationship. Alicia filed for a protection order alleging acts of abuse on Zachary's part but ultimately dismissed her requests for a protection order prior to any disposition by a court. While a voluntary dismissal of a request for a protection order is not dispositive of whether abuse occurred, we also note that Alicia signed a temporary child information affidavit stating that no incidents or abuse or neglect occurred. Therefore, while we do not ignore the acts of aggression alleged by Alicia, we do not find any abuse of discretion on the part of the district court in not making a specific finding that acts of domestic abuse occurred in the marriage.

The district court did not specifically mention the majority of the foregoing issues. Rather, the court found both parents to be fit. The court focused its analysis on whether the work schedule

of Zachary could be executed in a manner consistent with Forrest's best interest. It is apparent that the court did not believe that Forrest being delivered to childcare by 5:30 a.m. 6 days per week during Zachary's parenting time was reasonable, particularly given Forrest's age and the very different but more regular working hours associated with Alicia's job. Given our deference to the district court having viewed the witnesses and listened to the testimony coupled with the totality of the evidence, we find no abuse of discretion in the district court's decision to award sole physical custody of the parties' minor child to Alicia.

*Parenting Time.*

The Parenting Act does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody. Neb. Rev. Stat. § 43-2920 et seq. (Reissue 2016 & Cum. Supp. 2018). There exists a broad continuum of possible parenting time schedules that can be in a child's best interests. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). The Parenting Act provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. *Id.* When making determinations as to the allocation of parenting time, a trial court should also consider the parties' ability to communicate on issues such as transportation, homework, discipline, medical and dental appointments, and extracurricular activities. *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003). Other relevant considerations include stability in the child's routine, minimization of contact and conflict between the parents, and the general nature and health of the individual child. *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016). The Parenting Act presumes the critical importance of the parent-child relationship in the welfare and development of the child and that the relationship between the child and each parent should be equally considered unless it is contrary to the best interests of the child. *State on behalf of Kaaden S. v. Jeffrey T., supra.*

In the present case, we do not find that the court abused its discretion in determining Zachary's parenting time. The parenting plan provides for continued contact between both parents. Zachary was awarded parenting time every other weekend from 4 p.m. Friday until 7 p.m. on Sunday, every Tuesday and Thursday from 4 p.m. until 7 p.m., and holiday and summer parenting time. We note that the time awarded was somewhat in excess of what Alicia proposed.

The district court's award of parenting time again appears to have been shaped by Zachary's work schedule. Forrest's established routine is that he goes to bed around 7:30 or 8 p.m. and wakes up between 7 and 8 a.m. If Zachary were given overnights during the work week, he would have to wake up Forrest early enough to deliver him to a childcare provider by 5:30 a.m., thus disrupting Forrest's normal routine. While the court demonstrated its willingness to consider expanded parenting time, it found that the best interests of Forrest would not be served by granting Zachary weekday time beyond his two evenings a week.

Zachary argues that the court ignored the evidence he presented that he had at times changed his schedule in the past and could do so in the future. However, the court specifically questioned Zachary's supervisor, Sik, about potential changes in Zachary's schedule. During this

questioning, Sik testified that any permanent change in Zachary's hours would require Zachary to relocate to a different work site that provided a more traditional 40-hour week. Sik testified that to stay at his current job, Zachary would generally need to work the hours that were presently required, including overtime. Sik discussed other job opportunities with Zachary that would offer fewer and different hours but Zachary had to that point chosen not to change his job. The court, upon hearing the evidence and the witnesses, believed Sik's testimony as to Zachary's work schedule and his ability to change his work schedule. The court did not engage in speculation as to what Zachary's work schedule would be should he choose to take another job, but based its decision on the facts as they existed at the time of trial.

We find no abuse of discretion in the court's decision to base its parenting plan on current conditions rather than an uncertain decision by Zachary. The evidence demonstrated that if Zachery remained on the current jobsite, he would have steady work until 2035 and, due to the amount of overtime required, would earn a substantial paycheck. If he switched to a different job, he could reduce his hours and work a schedule that would be more friendly to additional parenting time. He would however take a cut in pay and would be more vulnerable to periods where he would not have full-time work due to the seasonal nature of some jobs or their shorter duration. Zachary had been made aware of the court's concerns about his current work schedule during the course of the temporary proceedings and in fact alleged in his motion filed September 5, 2019, that he had responded to the court's concerns by reducing his work hours. At trial, this reduction was proven to be temporary. As a result, the district court's approach was to provide Zachary with parenting time that fit his current schedule. However, the court fashioned an avenue by which Zachary could potentially increase his parenting time or even obtain joint custody. The onus was put on Zachary to first take the steps to place himself in a position to increase his time. The court found that if Zachary first changes to an 8 a.m. to 5 p.m. schedule, such a change could constitute a material change of circumstance. We find no abuse of discretion in the court's decision to require Zachary to make this adjustment before granting him more parenting time.

Finally, Zachary argues that the court's custody and parenting time determination deprived him of his constitutionally protected right as a fit parent. For support of his argument, he relies on *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). There the U.S. Supreme Court reaffirmed the longstanding rule that the Due Process Clause of the 14th Amendment has a substantive component that provides heightened protection against government interference with a parent's fundamental right to make decisions concerning the care, custody, and control of their children. See, also, *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). However, in *Troxel*, the Court was considering the constitutionality of a Washington statute that gave "any person" the ability to petition for visitation rights "at any time" and authorized the state superior courts to grant such rights whenever visitation may serve a child's best interests. There is little doubt that a parent's rights are to be protected as to a nonparent. The parental preference doctrine has long provided that in the absence of a statutory provision otherwise, in a child custody controversy between a biological or adoptive parent and one who is neither a biological or adoptive parent, a fit biological or adoptive parent has a superior right to custody of the child. See, *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016); *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992). Here, however, the court was not addressing the custody and visitation rights of Zachary

versus a nonparent. The applicable law is the well settled statutory and case law related to a custody dispute between two parents. The custody and parenting time arrangement determined by the court is well within the normal bounds of applicable law and did not deprive Zachary of any substantive constitutional right as a parent.

To the degree that Zachary's argument can be interpreted to mean that his procedural due process rights were violated, his argument also fails. While we agree that natural parents have a fundamental liberty interest in the care, custody, and management of their child, this interest is afforded due process protection requiring fundamental fairness which was met in the present case. See *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Fundamental fairness requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker. *Zahl v. Zahl, supra.* Here, the fundamental fairness requirements were met. Alicia filed an amended counterclaim in this case where she sought sole legal and physical custody of Forrest. At trial, Zachary was given an opportunity to confront and cross-examine adverse witnesses. He presented evidence to establish that custody and parenting time should be shared by Alicia and himself. The hearing was held before and decided by an impartial decision maker. Therefore, there was no procedural violation which impermissibly impacted Zachary's fundamental liberty interest to parent his child.

*Child Support.*

In his brief on appeal, Zachary argues that the district court erred in ignoring evidence presented at trial in determining the award of child support. He specifically argues that the court used its own subjective determination in determining his income and the income used for child support calculations does not accurately or fairly reflect his actual, current income. For the reasons below, we disagree with Zachary and affirm the decision by the district court.

In calculating child support, as a general matter, the parties' current earnings are to be used. *Peter v.* Peter, 262 Neb. 1017, 637 N.W.2d 865 (2002). It is appropriate to consider overtime wages in setting child support if the overtime is a regular part of the employment and the employee can actually expect to regularly earn a certain amount of income for working overtime. *State on behalf of Joseph F. v. Rial*, 251 Neb. 1, 554 N.W.2d 769 (1996). But an individual's level of income should not be based on the inclusion of income entirely speculative in nature. *Gress v.* Gress, 274 Neb. 686, 743 N.W.2d 67 (2007). The district court determined that Zachary's monthly gross income was $7,000 ($84,000 annually) for purposes of child support. Zachary argues that this amount does not reflect his current income nor is it based on his past income. According to Zachary, he earned approximately $42,000 in 2017 and $50,000 in 2018. Zachary also testified that his income could fluctuate because he does not always work the same amount of hours. However, Zachary also testified that he will be making more money as he completes his apprenticeship and becomes a journeyman. The record shows that in a period of 21 weeks from

June 2019 until November 2019, he earned $35,843 which would approximate $88,756 over the course of 1 year. Moreover, when he completed his answers to Alicia's interrogatories, Zachary stated that his gross income per month averaged over $8,000. Zachary testified that his current gross monthly income was more than $7,000 per month. While there was evidence that Zachary may adjust his schedule or that he will not always be able to work so many hours, any change in income would have been speculative based on the testimony given at trial. Sik testified that Zachary's current hours would remain as set for the foreseeable future so long as Zachary remained at his current job. Both Zachary and Sik testified that the work at his current jobsite would continue until 2035. Thus, the district court did not err when it utilized Zachary's current income in its calculation of child support, rather than any estimate about what Zachary's future income might be.

Zachary also argues that the district court abused its discretion because its decision creates an untenable scenario where Zachary has to choose between working longer hours in order to pay his current child support and being a father. He argues that he could gain more parenting time if he reduced the hours he worked, but if he reduced the amount of hours worked, he would never be able to pay the court-ordered child support. Therefore, he concludes, this is exactly the type of untenable result that is produced by an abuse of discretion.

We disagree. We, first, note that the district court included specific language in its decree stating that if Zachary were to change his schedule to a "reasonable" schedule, it "may" be considered a material change in circumstances to allow him to modify the custody and parenting time order. A "reasonable" schedule would approximate a workday of 8 a.m. until 5 p.m. If he changed his schedule to approximate this "reasonable" schedule, presumably the court would consider his reduced income along with his increased parenting time in calculating his child support obligation in any new order. At the time of trial however, any change in schedule that would include a reduction in hours and pay would have been entirely speculative in nature. Zachary previously declined to take alternative jobs that would have allowed him to work 40 hours per week. Based on the court's prior comments and temporary rulings pending trial Zachary knew that the court was interested in his work schedule for the amount of "quality hours" that he could spend with Forrest. However Zachary chose to decrease his hours only temporarily. He did not move to a different job site where he could maintain a more "reasonable" schedule. Had he taken the actions necessary to permanently reduce his working hours closer to a 40-hour workweek during more normal business hours, the court would have considered his work schedule in considering custody, parenting time, and child support. But because he did not keep this schedule, any schedule change would be entirely speculative in nature for purposes of child support. Thus, we do not find that the district court's decision was an abuse of discretion.

CONCLUSION

For the foregoing reasons, we affirm the decisions of the district court awarding sole physical custody to Alicia and ordering Zachary to pay $890 per month in child support. We also affirm the decision of the district court with respect to its award of parenting time.

AFFIRMED.