IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


GAFFNEY V. CHAPPELEAR


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


KRISTIN J. GAFFNEY, APPELLANT,

V.

TYLER H. CHAPPELEAR, APPELLEE.


Filed May 24, 2022.    No. A-21-760.


Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Alton E. Mitchell, of Alton E. Mitchell Attorney at Law, L.L.C., for appellant.

James F. Cann and Cody B. Nickel, of Koley Jessen, P.C., L.L.O., for appellee.


PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

In this paternity action, Kristin J. Gaffney appeals the order of the Douglas County District Court awarding the parties joint legal and physical custody of the parties' two children. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

Kristin and Tyler H. Chappelear are the biological parents of two children: Olivia A. Gaffney-Chappelear, born in August 2013, and Maddux J. Gaffney-Chappelear, born in April 2016. The unmarried parties resided together as a couple from about 2012 until their separation in August 2017. While residing together, Kristin was employed as a nurse working overnight shifts three nights per week and Tyler was self-employed. After the parties' separation, Kristin continued

- 1 -

to work overnight shifts until October 2018 when she transitioned to day shifts. Tyler worked 8 to 10 hours per day, 6 days per week, at a car dealership.

In late July 2020, Kristin filed a complaint to establish paternity, child custody, and child support, and requested that the court award her sole legal and physical custody of the parties' two minor children. Tyler filed an answer and counterclaim requesting joint legal and physical custody.

While they were working, both Kristin and Tyler utilized the other parent, family, and daycare to care for the children. The parties generally exercised equal parenting time until March 2021 when Kristin began noticing that Olivia was exhibiting behavioral changes. Kristin deduced that the behavioral issues were caused by the parties' parenting time schedule and reduced Tyler's parenting time to Thursday evenings and Fridays.

In April 2021, Tyler filed a motion for a temporary order establishing parenting time. Kristin also filed a motion for a temporary order establishing a parenting time schedule, child support, and other expenses related to the children. At the April 21 temporary hearing, the district court stated:

> So I reviewed the affidavits, listened to arguments, and this is how I see it is, generally, . . . when I go into these cases, my default is joint legal, joint physical, 50/50.
>
> And then I don't know if there's any other way to have any other default. I think that would be inappropriate. So that's where I start out, right in the middle, and then I deviate from that based upon the circumstances . . . of the case. And it's not unusual for me to deviate from my default based upon the circumstances of the case.
>
> In this case, I'm happy to say that it certainly appears to me that both parties are appropriate, mature, responsible people. The affidavits reflect that [Kristin] has had the primary responsibility in terms of the physical custody and the legal custody.
>
> . . . .
>
> Then why don't we do it this way is I don't really see a reason to deviate from the default, so the temporary order will be that the parties are temporarily granted joint legal and joint physical custody.

Thereafter, the court's May 13, 2021, temporary order awarded the parties temporary joint physical and legal custody and instructed the parties to parent on the following schedule:

> [Kristin] shall parent and have primary physical possession of the minor children on Mondays, Tuesdays and every other weekend. [Tyler] shall parent and have primary physical possession of the minor children on Wednesdays, Thursdays and every other weekend. Such schedule shall commence on April 21, 2022[,] with [Kristin] parenting and having primary physical custody of the minor children herein on the first following weekend; the parties shall rotate every other weekend thence. During any time one or both minor children are not enrolled and attending school, each parent is responsible for arranging any necessary work[-]related childcare necessary during the times each such parent has primary physical custody.

The trial on Kristin's complaint for paternity, custody, and support and Tyler's counterclaim was held over 2 days in June and August 2021. In August, the district court entered

an order awarding the parties joint legal and physical custody of Olivia and Maddux. Specifically, the court's order provided:

15. With regard to legal custody, the Court finds that both parties have participated in making fundamental decisions regarding the children's welfare, including choices regarding education and health. There is no evidence of prior or current disputes over health or education. Despite any differences in the parties' preferences, they have been capable of making, and have made, joint decisions for the children.

16. With regard to physical custody, although the parties disagree on exactly how much parenting time has been exercised by the other, for the calendar year 2020 and for 2021 until approximately the time of the Temporary Order entered in this matter, a period of time that the Court finds to be significant, the evidence demonstrates that both parents have undertaken the responsibility of providing a residence for the children and that they have both exerted continuous blocks of parenting time with the children. The Court further finds that the Court's Temporary Order dated May 13, 2021[,] provides for 50/50 parenting time with [Kristin] having parenting time on Monday and Tuesday, [Tyler] having parenting time on Wednesday and Thursday, and the parties alternating weekends on Friday through Sunday. Since the entry of this Temporary Order, both parties have continuously exercised their parenting time pursuant thereto.

The court further ordered the parties to parent as follows:

a. [Kristin] shall parent and have primary physical possession of the minor children on Mondays, Tuesdays, and every other weekend.

b. [Tyler] shall parent and have primary physical possession of the minor children on Wednesdays, Thursdays, and every other weekend. On any Saturday of [Tyler's] parenting time on which [Tyler] is required to work and on which Saturday [Tyler] requires a non-family member to provide daycare for the children, [Kristin] shall have a right of first refusal to have additional parenting time with the children while [Tyler] is at work.

c. During any time one or both minor children are not enrolled and attending school, each parent is responsible for arranging any necessary work-related childcare necessary during the times each such parent has primary physical custody.

d. Each party is responsible for transportation of the minor children at the onset of their respective parenting time. The minor children shall be picked up by such parent from school or daycare, as the case may be. Under circumstances where the children are not in school or daycare at the onset of parenting time, the children shall be picked up by such parent from the other parent's residence.

Kristin has timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

On appeal, Kristin alleges that the district court erred in (1) creating and employing a rebuttable presumption in favor of joint physical and/or joint legal custody, (2) in failing to find that she had been the minor children's primary caregiver, (3) in finding that joint legal and physical

custody was in the minor children's best interests, and (4) in determining that equal parenting time was in the minor children's best interests.

## IV. STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Franklin M. v. Lauren C.*, 310 Neb. 927, 969 N.W.2d 882 (2022).

Parenting time determinations are matters initially entrusted to the discretion of a trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Bornhorst v. Bornhorst*, 28 Neb. App. 182, 941 N.W.2d 769 (2020). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

In a de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Kaaden S. v. Jeffery T.,* 303 Neb. 933, 932 N.W.2d 692 (2019).

## V. ANALYSIS

### 1. REBUTTABLE PRESUMPTION

Kristin first alleges that the district court erred in creating and employing a rebuttable presumption in favor of joint physical and/or joint legal custody. In furtherance of her argument, Kristin points to a comment made by the court during the hearing on Tyler and Kristin's motions to establish a temporary parenting time schedule and child support wherein the court referenced that joint physical and legal custody was the court's "default."

The Parenting Act, Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2020), requires that all determinations of custody and parenting time be based on factors affecting the best interests of the child. See *State on behalf of Kaaden S. v. Jeffery T., supra.* Nebraska law neither favors nor disfavors any particular custody arrangement and instead requires all such determinations to be based on the best interests of the child. *Id.*

Here, Kristin contends that the district court erred in presuming that joint custody was a default when the case law neither favors nor disfavors a particular custody arrangement. Specifically, during the hearing regarding the temporary orders, the district court stated, "when I go into these cases, my default is joint legal, joint physical, 50/50." Kristin argues that the court's statement suggests that the court applies a "rebuttable presumption" favoring joint legal and physical custody which departs from the proper standard of weighing the best interests of the children. Brief for appellant at 8.

In analyzing this first assignment, we note the court's statement was made in connection with the court's entering of the temporary order, not the final decree. In *Smith v. King*, 29 Neb. App. 152, 175, 953 N.W.2d 258, 275 (2020), we stated:

> [The appellant] contends that the district court erred in various ways at the temporary hearing and in the temporary order and that such errors resulted in his not

receiving a sufficient amount of parenting time. However, any issues regarding temporary custody and parenting time became moot upon entry of the decree of paternity establishing permanent custody and parenting time. See, *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004) (temporary order rendered moot when permanent custody order entered); *Mann v. Rich*, 18 Neb. App. 849, 794 N.W.2d 183 (2011) (any issue relating to temporary order is moot after it is replaced by more permanent order).

To the extent that [the appellant] takes issue with the effects of the temporary order on child support matters, the paternity decree on May 8, 2019, and the subsequent orders on September 26 and October 3 corrected the amount of [the appellant's] monthly child support owed under the temporary order. And [the appellant] does not claim error with respect to the recalculation of the monthly child support obligation owed under the temporary order.

Kristin claims error in connection with language used by the district court in connection with its temporary order. That order was superseded by the August 2021 decree and was rendered moot. As such, we need only analyze whether the court applied the wrong standard in connection with the August decree wherein the court ordered joint legal and physical custody. We find that the court did not apply an erroneous standard.

In the August 2021 decree, the court did not utilize language similar to its statements used in connection with the temporary order. Instead, the court used language consistent with having narrowly tailored its inquiry in determining what was in the best interests of the children without applying any rebuttable presumption or other standard in determining custody of the minor children. After reviewing the full record here, we find no indication that the district court applied anything other than the best interests standard in connection with its final custody order. This assignment of error fails.

## 2. PRIMARY CAREGIVER

Kristin's second assigned error is that the district court erred in failing to find that she had been the minor children's primary caregiver.

Here, the parties provided conflicting testimony as to whether either party was the primary caregiver. Tyler testified that he remained active with his children since the parties' separation including cooking, cleaning, and attending school appointments, activities, and events. He stated that he had been involved with the children in the same way that Kristin had been. Tyler paid for daycare and medical expenses and had actively participated in his parenting time. Kristin, on the other hand, testified that she was the children's primary caregiver, had enrolled the children in school and activities, set up medical appointments, provided their day-to-day care, and changed her work schedule to meet her children's needs.

When the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

In its final order, the district court found, regarding physical custody, that although the parties disagreed on how much parenting time was exercised by the other parent, during a "significant" period of time including calendar year 2020 and in 2021 until the entry of the temporary order, the evidence demonstrated that "both parents have undertaken the responsibility of providing a residence for the children and . . . have exerted continuous blocks of parenting time with the children." Further, the court found that the evidence, viewed as a whole, demonstrated that the minor children have good relationships with both parents and that both parents and their families were active and supportive in the children's lives. Prior to the entry of the temporary order, the children enjoyed spending time with both parents, the children were involved in age-appropriate activities, both parents were actively involved and supportive of the children, and the parents communicated as needed to attend to the children's needs and to facilitate parenting time arrangements that were generally consistent with joint physical custody. The court further found that, after entry of the temporary order, the parties followed the order and had 50/50 parenting time with their children.

Under our de novo review, we find the district court's statements related to the primary parenting functions to be proper in light of the evidence. We find no error in the court's acceptance of Tyler's, as opposed to Kristin's, version of the facts. Therefore, we find that the district court did not abuse its discretion in failing to find that Kristin was the primary caregiver of the parties' minor children. This assignment of error fails.

### 3. Joint Legal and Physical Custody

Kristin's third assigned error is that the district court erred in finding that joint legal and physical custody was in the minor children's best interests.

Nebraska's Parenting Act defines legal custody as "authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(13) (Cum. Supp. 2020). "Physical custody" is defined by the Parenting Act as "authority and responsibility regarding the child's place of residence and the exertion of continuous parenting time for significant periods of time." § 43-2922(20).

Neb. Rev. Stat. § 43-2923 (Reissue 2016) provides:

(6) In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision, abuse and family or household member shall have the meanings prescribed in section 42-903; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse. For purposes of this subdivision, the definitions in section 43-2922 shall be used.

See *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019).

In addition to the statutory factors relating to the best interests of the child, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension, regardless of chronological age, and when such child's preference is based on sound reasons; and the general health, welfare, and social behavior of the child. *State on behalf of Dawn M. v. Jerrod M.*, 22 Neb. App. 835, 861 N.W.2d 755 (2015); *Collins v. Collins,* 21 Neb. App. 161, 837 N.W.2d 573 (2013).

Here, the evidence established that the parties communicate well and had operated under an informal parenting time schedule prior to the entry of the temporary order which included coordinating pick-up and drop-off times with their work schedules, attending Olivia's extracurricular activities, and cooperating regarding the children's medical health and wellbeing. The parties maintained an equal parenting time schedule until Kristin modified that arrangement in March 2021 due to her concern with Olivia's behavior. The record shows, and neither party disputes, that both parents have great relationships with their children and are fit and proper parents; the children's physical, emotional, and social needs are being met by both parents; and the minor children are happy and healthy. Additionally, we find no error in the court's determination that the children do not have any behavioral issues that were not already being handled by the parents. And as we stated above, we find no error in the district court's finding that prior to the court's temporary order, both parents had undertaken the responsibility of providing a residence for their children and both exerted continuous blocks of parenting time with the children. Based upon our de novo review, we find that the record supports an award of joint legal and physical custody, and the district court did not abuse its discretion in so ordering it. This assignment of error fails.

### 4. EQUAL PARENTING TIME

Kristin's final assigned error is that the district court erred in determining that equal parenting time was in the minor children's best interests.

Joint physical custody is neither favored nor disfavored under Nebraska law, and, in fact, no custody or parenting time arrangement is either favored or disfavored as a matter of law. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

The Parenting Act, Neb. §§ 43-2920 to 43-2943, does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody, and there exists a broad continuum of possible parenting time schedules that can be in a child's best interests. *State on behalf of Kaaden S. v. Jeffery T., supra*.

Here, the district court awarded parenting time in accordance with its joint custody award stating:

a. [Kristin] shall parent and have primary physical possession of the minor children on Mondays, Tuesdays, and every other weekend.

b. [Tyler] shall parent and have primary physical possession of the minor children on Wednesdays, Thursdays, and every other weekend. On any Saturday of [Tyler's] parenting time on which [Tyler] is required to work and on which Saturday [Tyler] requires a non-family member to provide daycare for the children, [Kristin] shall have a right of first refusal to have additional parenting time with the children while [Tyler] is at work.

The district court's order generally provided each parent with equal time with the children. The evidence at trial established that both parents have remained active in their children's lives including participating in school enrollment and activities in addition to their respective parenting time. The children's needs were being met by both parents and the parties have been able to communicate effectively to ensure compliance with the informal and formal parenting time arrangements. Although the parties both acknowledged that Olivia had behavioral issues in school, the parties disagreed regarding the seriousness of the behaviors. Tyler indicated that Olivia seemed to do a lot of talking during class but that the parties have been managing the issue by staying in contact with Olivia's teacher and reviewing Olivia's daily behavioral reports. Kristin, on the other hand, opined that Olivia's behavioral concerns at school were far worse and were a result of the parenting time schedule. The district court found that neither child had special needs that were not being properly managed by the parents and awarded equal parenting time.

We find no error in the court's acceptance of Tyler's assessment and resolution of Olivia's behavioral issues as opposed to Kristin's. Kristin argues that Tyler downplayed Olivia's behavioral concerns and therefore the court should not have accepted Tyler's statements concerning Olivia's school behaviors. However, when evidence is in conflict, we give weight to the fact that the district court heard and observed the evidence and testimony and accepted one version of the facts presented as being more credible than the other version. See *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Therefore, we find that the district court did not abuse its discretion in awarding equal parenting time to the parties in connection with its award of joint legal and physical custody.

## VI. CONCLUSION

As stated above, the district court did not abuse its discretion in its determination that joint legal and physical custody and nearly equal parenting time was in the best interests of the minor children. Therefore, we affirm the district court's order of paternity, child custody, and support.

AFFIRMED.